Tage M. NYMAN, Plaintiff and Appellee,

v.

R. Daryl McDONALD, Defendant
and Appellant.

No. 971692–CA.

Court of Appeals of Utah.

Oct. 16, 1998.

Jay R. Mohlman and Scott M. Ellsworth, Nielsen & Senior, Salt Lake City, for Appellant.

David K. Smith, Midvale, for Appellee.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

ORME, Judge:

This case involves the sufficiency of an attempted cure of a buyer's default under a trust deed. Defendant R. Daryl McDonald appeals from the trial court's order denying his motion for summary judgment and granting summary judgment in favor of plaintiff Tage M. Nyman. We reverse in part, affirm in part, and remand for further proceedings.

## FACTS

In reviewing a trial court's summary judgment ruling, "we accept the facts and inferences in the light most favorable to the losing party." *Winegar v. Froerer Corp.*, 813 P.2d 104, 107 (Utah 1991).

During the latter half of 1992, McDonald began negotiating to buy Patrick McCauley's interest in four rental properties owned by Nyman. McCauley was purchasing the properties from Nyman on contract. Eventually, McCauley quitclaimed his interest in the properties to Nyman, allowing McDonald and Nyman to negotiate directly—which they did from December 1992 through January 1993. These negotiations culminated on February 8, 1993, when the parties closed a transaction in which McDonald purchased the properties, giving promissory notes secured by trust deeds for most of the purchase price. The parties also entered into escrow agreements for each of the four properties, with Draper Bank and Trust Company designated as their escrow agent.

Under the trust deed notes covering three of the properties, McDonald was required to pay $550 per month per property, with an additional $550 per property due on March 25, 1993. Under the trust deed note covering the fourth property, McDonald was obligated to pay $650 per month, with an additional $650 due on March 25, 1993.

By April of 1993, McDonald had neglected to make payments on all four properties and, pursuant to a provision in the trust deeds, Nyman had begun collecting rents directly. On April 20, 1993, Nyman sent McDonald a letter apprising him of his defaults which, by Nyman's calculations, totaled over $3700. In early June of 1993, McDonald forwarded a $1200 cashier's check to Draper Bank. On June 11, 1993, Wendy Smith, a Draper Bank employee, responded to McDonald with a letter informing him that his arrearages far exceeded $1200 and that she was unable to accept McDonald's payment in this amount because Draper Bank could not accept partial payments.

On June 18, 1993, Nyman's attorney recorded default notices on three of the four properties. According to these notices, McDonald was in default because he had "failed to make the monthly payments as provided in the Trust Deed Note" for all three properties. Shortly thereafter, McDonald telephoned Draper Bank from California and asked Wendy Smith how much he needed to pay to cure his defaults. Smith informed McDonald that a $6900 payment was needed to bring the defaults current on the three noticed properties. Based on this conversation, McDonald flew from California and personally delivered a $6900 cashier's check to Smith, who then informed McDonald that an additional $345 was needed for late fees. McDonald paid this amount in cash, making his total payment $7245. At that point, McDonald understood that he had cured the three noticed defaults.

However, this was not Nyman's understanding. According to Nyman, McDonald's $7245 payment did not cover the additional payments due on March 25, 1993, nor did it cover certain building maintenance and upkeep expenses which Nyman felt McDonald was required to pay.[1] Thus, it was Nyman's position that McDonald had not cured the deficiencies encompassed by the notices of default. Accordingly, Nyman continued directly collecting rents and proceeded with nonjudicial foreclosure of the properties.

Although he had elected to proceed with nonjudicial foreclosure efforts, on September 3, 1993, Nyman also filed this action against McDonald, seeking amounts due under the trust deed notes and a restraining order preventing McDonald from collecting rents on the properties. McDonald counterclaimed, seeking quiet title in his favor and damages for breach of fiduciary duty and contract. Lengthy litigation ensued, culminating in cross-motions for summary judgment.

On summary judgment, McDonald argued that his $7245 payment to Draper Bank cured the noticed defaults, which therefore should have been canceled. He contended

---

1. While it is at least arguable that the extra March payments were encompassed within the "monthly payments" mentioned in the notices of default, the notices in no way referred to the additional expenses.

that Nyman was required to renotice any subsequent defaults before foreclosing. Additionally, McDonald argued that Nyman's notices of default were legally insufficient because they failed to adequately specify McDonald's claimed defaults. McDonald also argued, for the first time, that Nyman slandered McDonald's title by collecting rents directly and publishing a notice of trustee's sale. In support of his position, McDonald relied on his deposition, taken by Nyman's counsel. In his deposition, McDonald recounted his attempts to cure the noticed defaults by paying Draper Bank and Wendy Smith's representation to him that his $7245 payment had in fact cured the defaults.

Nyman contended that other defaults remained after McDonald's $7245 payment and that Draper Bank had no authority to determine whether McDonald had cured any of these deficiencies. In support of this position, Nyman filed a sworn affidavit in which he stated that Draper Bank acted merely as an agent for receiving and disbursing funds.

The trial court granted summary judgment for Nyman and denied McDonald's summary judgment motion. In so doing, the court concluded that McDonald's $7245 payment to Draper Bank failed to cure the noticed defaults. Draper Bank, the court ruled, had no authority under the escrow agreement to determine whether a default existed or had been cured.

### ISSUES

McDonald appeals the trial court's grant of summary judgment in Nyman's favor, arguing that factual issues precluded summary judgment. McDonald asserts that Nyman's default notices were legally deficient and that McDonald's payment to Draper Bank cured his arrearages. Further, McDonald objects to the trial court's findings, conclusions, and order on summary judgment, arguing that the court ordered relief outside the scope of the pleadings and failed to address McDonald's objections thereto. In addition, McDonald contends that no factual issues precluded summary judgment in his favor and that Nyman's actions amounted to slander of title as a matter of law.

### STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "In determining whether the lower court correctly found that there was no genuine issue of material fact, we view the facts and inferences to be drawn therefrom in the light most favorable to the losing party." *Dwiggins v. Morgan Jewelers*, 811 P.2d 182, 183 (Utah 1991). In other words, "we review the factual submissions to the trial court in a light most favorable to finding a material issue of fact." *Versluis v. Guaranty Nat'l Cos.*, 842 P.2d 865, 867 (Utah 1992). Moreover, "[i]n reviewing a grant of summary judgment, we accord no deference to the trial court's conclusions of law and review them for correctness." *Drysdale v. Ford Motor Co.*, 947 P.2d 678, 680 (Utah 1997).

### NYMAN'S MOTION FOR SUMMARY JUDGMENT

Because we find this issue dispositive, we first address McDonald's contention that factual issues precluded summary judgment in Nyman's favor. McDonald argues that material factual issues surround his attempted cure of the defaults for which Nyman filed notices.

To exercise the nonjudicial power of sale upon default, the trustee of property secured by a trust deed must first file a notice of default "containing a statement that a breach of an obligation for which the trust property was conveyed as security has occurred, and setting forth the nature of that breach." Utah Code Ann. § 57–1–24(1) (1994).

However, within three months of a trustee's filing of a notice of default, the debtor or someone acting in his behalf

> may pay to the beneficiary or his successor in interest the entire amount then due under the terms of such trust deed (including costs and expenses actually incurred in enforcing the terms of such obligation, or trust deed, and the trustee's and attorney's fees actually incurred) other than such portion of the principal as would not then

be due had no default occurred, and thereby cure the default theretofore existing and, thereupon, all proceedings theretofore had or instituted shall be dismissed or discontinued and the obligation and trust deed shall be reinstated and shall be and remain in force and effect the same as if no such acceleration had occurred.

*Id.* § 57–1–31(1).

"Reinstatement," as it is used in section 57–1–31, is the curing of the default. In other words, the parties are returned to their former status as if the default had never occurred. If a trustor subsequently defaults again, the beneficiary must begin new foreclosure proceedings. It may not rely on the previous notice of default and declaration of acceleration.

*Progressive Acquisition, Inc. v. Lytle,* 806 P.2d 239, 242 n. 3 (Utah Ct.App.1991).

Hence, when Nyman's counsel filed the June 18, 1993 notices of default, McDonald had three months to cure the deficiencies described therein and pay any other amounts then due pursuant to section 57–1–31(1). Such a cure would return the parties to their former status, as if the default had never occurred. According to McDonald, he accomplished this reinstatement through his payment of $7245 to Draper Bank in early July 1993.

■ However, in granting summary judgment in Nyman's favor, the trial court concluded that this payment failed to cure the deficiencies enumerated in the June 18, 1993 notices of default. The court further concluded that Draper Bank had no authority to determine whether a default existed or had been cured. In arriving at these determinations, the court ruled that no genuine issue of material fact existed that would preclude summary judgment for Nyman. We disagree.

■ "One sworn statement under oath [involving a material fact] is all that is necessary to create a factual issue, thereby precluding summary judgment." *Amica Mut.*

*Ins. Co. v. Schettler,* 768 P.2d 950, 957 (Utah Ct.App.), *cert. denied,* 109 Utah Adv. Rep. 39 (Utah 1989). Such sworn statements include deposition testimony that is before the trial court on summary judgment. *See, e.g., Records v. Briggs,* 887 P.2d 864, 871 (Utah Ct. App.1994). When testimonial evidence and affidavits are in conflict as to payments under a trust deed note, and documentary evidence is inconclusive, a genuine issue of material fact exists and summary judgment is inappropriate. *See, e.g., Reinbold v. Utah Fun Shares,* 850 P.2d 487, 491 n. 3 (Utah Ct.App.1993).

McDonald's deposition testimony was that, in response to the notices of default, he telephoned Wendy Smith, a Draper Bank employee with whom he had previously dealt, to find out what actions were necessary to cure the noticed defaults. McDonald further attested that Smith told him that a $6900 payment would cure his default. Accordingly, in early July of 1993, McDonald personally delivered a $6900 check to Draper Bank to cover the default, plus $345 in cash to cover late fees, for a total of $7245. McDonald testified that he assumed this would necessarily be the full amount then due to cure the defaults, given not only Smith's prior discussion with him but also Draper Bank's previously announced policy of not accepting partial payments. Thus, McDonald argued on summary judgment that Draper Bank acted as Nyman's agent in accepting the $7245 payment as curative of McDonald's defaults and that principles of agency consequently required Nyman to recognize this payment as curing the noticed defaults.

In contrast, Nyman stated in a sworn affidavit that Draper Bank acted merely as an agent for receiving and disbursing funds paid by McDonald,[2] and that McDonald failed to cure the deficiencies encompassed by the June 18, 1993 notices of default. Hence, Nyman argued on summary judgment that, under the escrow agreement, Draper Bank had no authority to determine whether McDonald had cured any defaults under the

---

**2.** We note that such limited responsibility is entirely inconsistent with Wendy Smith's refusal to accept one payment tendered by McDonald; her directions to McDonald relative to curing the

defaults; and, in particular, her insistence on the contemporaneous payment of substantial late fees.

trust deeds and his $7245 payment, therefore, did not cure the noticed deficiencies since additional amounts were due.[3]

Under both McDonald's and Nyman's view of Draper Bank's actions and authority, it is undisputed that the parties appointed Draper Bank to act as their escrow agent in receiving payments under the trust deed agreements. Unfortunately, the escrow agreement does not conclusively indicate whether and to what extent Draper Bank had authority to determine if a default between Nyman and McDonald existed or had been cured. Therefore, because McDonald's testimony and Nyman's affidavit are in conflict as to this issue, and the escrow agreement is inconclusive, a genuine issue of material fact exists and summary judgment was inappropriate.

Because we conclude genuine issues of material fact precluded summary judgment for Nyman in any event, we have no need to rule on McDonald's objections to the trial court's findings, conclusions, and order on summary judgment. Although technically we likewise have no need to rule on McDonald's argument that Nyman's notices of default were legally deficient, we do so because this question is likely to resurface on remand. *See State v. Emmett,* 839 P.2d 781, 786 (Utah 1992) (ruling that appellate courts may address issues that need not be reached given disposition on appeal, but are likely to resurface on remand).

■ McDonald claims Nyman's notices of default failed to meet the statutory requirement that default notices "set[ ] forth the nature of [the] breach." Utah Code Ann. § 57–1–24(1) (1994). A statutory term such as this "should be interpreted and applied according to its usually accepted meaning, where the ordinary meaning of the term results in an application that is neither unreasonably confused, inoperable, nor in blatant contradiction of the express purpose of the statute." *Morton Int'l, Inc. v. State Tax Comm'n,* 814 P.2d 581, 590 (Utah 1991).

The definitions of "nature" in everyday parlance include "the essential character or constitution of something," as in "the [nature] of the controversy." *Webster's Third New International Dictionary* 1507 (1976). The usually accepted meaning of "nature" in the legal context refers to the "kind, sort, type, order" or "general character" of a thing. *Black's Law Dictionary* 1027 (6th ed.1990). While they admittedly lacked meaningful specificity, Nyman's notices of default, which stated McDonald "failed to make the monthly payments as provided in the Trust Deed Note[s]," sufficiently described the sort, type, or essential character of McDonald's breach. In other words, although they failed to mention particular amounts and payments, the notices of default adequately set forth "the nature of the breach" for purposes of section 57–1–24(1). Accordingly, the notices of default were not so vague as to be invalid.

## MCDONALD'S MOTION FOR SUMMARY JUDGMENT

■ Although the trial court erroneously granted Nyman's summary judgment motion, it correctly denied McDonald's motion for summary judgment on his slander of title claim. "A published false statement ... does not constitute slander of title without the element of malice." *First Sec. Bank v. Banberry Crossing,* 780 P.2d 1253, 1257 (Utah 1989). There is simply no suggestion that Nyman acted with malice. Even assuming McDonald cured the noticed defaults, Nyman merely acted on a mistaken belief that he had the right to foreclose on the properties. Moreover, McDonald neither alleged slander of title in his counterclaim, nor did he amend his counterclaim to include this cause of action. Instead, he asserted this claim for the first time in moving for summary judgment. Consequently, the trial court properly denied McDonald's motion for summary judgment, and we affirm this ruling.

---

**3.** Nyman also alleges, albeit without citation to the record, that Wendy Smith does not recall having told McDonald that his $7245 payment would cure the noticed default. That her recollection is the opposite of McDonald's merely emphasizes the critical factual dispute that makes summary judgment improper.

## CONCLUSION

The conflicting testimonial evidence and inconclusive documentary evidence created at least one genuine issue of material fact surrounding Nyman's motion for summary judgment. Consequently, we reverse the trial court's grant of this motion and remand for trial or such other proceedings as may now be in order. Because McDonald failed not only to prove but to even plead slander of title in his counterclaim, we affirm the trial court's denial of McDonald's motion for summary judgment.

BENCH and BILLINGS, JJ., concur.