2000 Utah Ct. App. 108

**Antenette MUNFORD and Jon Badger, Plaintiffs and Appellants,**

v.

**LEE SERVICING COMPANY, Defendant and Appellee.**

No. 990188–CA.

Court of Appeals of Utah.

April 20, 2000.

435, inasmuch as neither party raised this issue in either their briefs or oral arguments.

David K. Smith, Midvale, for Appellants.

Judy Jorgensen and J. Scott Lundberg, Salt Lake City, for Appellee.

Before JACKSON, Associate P.J., GARFF, Senior J.,[1] and ORME, J.

1. Senior Judge Regnal W. Garff sitting by special appointment pursuant to Utah Code Ann. § 78–2–4(2) (1996); Utah Code Jud. Admin. R3–108(4).

2. This Amended Opinion replaces the Opinion in Case No. 990188-CA issued on March 16, 2000. This opinion has been amended to emphasize the distinction between mortgages and trust deeds.

## AMENDED OPINION [2]

GARFF, Senior Judge:

¶ 1 Antenette Munford and Jon Badger (Appellants) appeal the trial court's grant of summary judgment in favor of Lee Servicing Company (Lee). Appellants contend the court erred in concluding the insurance policy at issue was not in effect at the time a fire damaged their home. We reverse.

## BACKGROUND

¶ 2 Appellants owned a home in Salt Lake City. They placed two encumbrances on the home. The first lien holder was Zions Bank; the second lien holder was Alliance Funding Corporation. Both liens were evidenced in trust deeds and promissory notes. Alliance's loan was monitored and serviced by Lee on behalf of Alliance.

¶ 3 Appellants carried insurance on the property through Farmer's Insurance. However, the Farmer's Insurance policy was canceled on October 15, 1996. Under the terms of the second trust deed, Appellants had to maintain insurance on the property to protect the interests of Lee's principal. If Appellants failed to maintain such insurance, Lee had the right to order a "force-placed" policy, i.e., Lee could obtain the insurance and charge the premium back to Appellants.

¶ 4 Lee was aware of the Farmer's insurance cancellation. Lee notified Appellants that they must maintain insurance on the property, and that failure to do so would result in Lee obtaining the required insurance. Lee asserts it received no notice before December 20, 1996 that Appellants had obtained a new insurance policy on the property, and therefore ordered an insurance policy on the property as permitted under the terms of the trust deed.[3] This force-placed policy was issued under Lee's master policy

3. Although Lee asserts that it did not receive notice of current insurance before this date, the "force-placed" policy would have been in effect before this date. The facts do not show the date Lee actually ordered the policy to be placed. But on December 20, Lee sent notice to Appellants that a policy was then in effect and requested reimbursement for the premium cost advanced by Lee.

provided by Cigna Insurance (Cigna). The policy was made effective as of October 15, 1996—thus providing continuous coverage from the cancellation date of the Farmer's policy—and listed an expiration date of October 15, 1997.

¶ 5 Appellants were notified of the force-placed policy by two letters sent together, one from Lee and one from Cigna. The Cigna document, dated December 20, 1996, and titled "Mortgagor's Evidence of Insurance Coverage Placed," notified Appellants that their mortgage lender had ordered an insurance policy. The letter noted the effective date of October 15, 1996, the expiration date of October 15, 1997, policy coverage for the amount secured by the second trust deed, and the premium cost. The letter also noted that "[c]overage as described hereon is excess over any other valid and collectible insurance."

¶ 6 Lee sent Appellants Cigna's evidence of insurance along with a letter from Lee dated December 22, 1996, regarding the Cigna policy. The letter explained that Lee ordered the Cigna policy to protect its interests in the absence of evidence from Appellants of continuing insurance on the property. The letter emphasized that the coverage of the policy was limited to the balance of the Alliance loan and would not be enough to cover all losses. It also demanded payment of $157 for the premium costs.[4] Finally, the letter stated Appellants should provide evidence of insurance to Lee "[s]hould you wish to provide us with an acceptable replacement policy."

¶ 7 Although Lee insured the property at some point between October 15 and December 20, Appellants had told Lee sometime before December 14 that they had obtained a replacement insurance policy.[5] Appellants bought insurance from Phoenix Insurance, with a retroactive effective date of October

15, 1996, thus providing continuous coverage for the property. On the record before this court, it is not clear when the Phoenix insurance was bought, though the insurance application is dated in September of 1996.[6]

¶ 8 On December 14, 1996, a fire damaged the property, resulting in almost total loss. The Phoenix insurance policy reimbursed Appellants for the depreciated value of the home plus its contents. After paying the premium to Lee for the Cigna policy, Appellants demanded payment under that policy for excess damages not paid for by Phoenix. Appellants argue that the Cigna policy provided coverage for such excess damages by its terms.

¶ 9 Lee moved for summary judgment, arguing that the Cigna policy was not in effect on the date of the fire, and thus was not available for any claim against it. Lee argued that the Cigna policy was void at its inception because Appellants had obtained insurance coverage retroactively effective as of October 15, thereby nullifying the Cigna policy under its express terms. The trial court granted summary judgment, finding that the policy was not in effect on the date of the fire.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 10 The issue is whether the trial court erred in granting summary judgment to Lee after concluding that the Cigna policy was not in effect on the date of the fire. "Summary judgment is proper only when 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.'" *Nyman v. McDonald*, 966 P.2d 1210, 1212 (Utah Ct. App.1998) (quoting Utah R. Civ. P. 56(c)) (omission in original). Furthermore, "'we view the facts and inferences to be drawn therefrom in the light most favorable to the losing party.'" *Id.* (citation omitted). Thus,

---

4. Appellants paid the premium as demanded on January 13, 1997.

5. Lee disputes this fact. However, on a motion for summary judgment, we accept the facts in the light most favorable to the nonmoving party, thus we recite the facts accordingly. *See Nyman v. McDonald*, 966 P.2d 1210, 1211 (Utah Ct.App. 1998).

6. The actual date of issuance is not included in the record, but both parties acknowledge that the policy was made retroactively effective to October 15, suggesting the actual issue date was later than that.

"'we review the factual submissions to the trial court in a light most favorable to finding a material issue of fact.'" *Id.* (citation omitted). We review the court's conclusions of law for correctness, with no deference granted to the trial court's ruling. *See id.*

¶ 11 Moreover, interpretation of a contract is a matter of law. *See Nova Cas. Co. v. Able Constr., Inc.,* 1999 UT 69, ¶ 6, 983 P.2d 575. The existence of ambiguity in a contract is likewise a question of law. *See Village Inn Apartments v. State Farm Fire & Cas. Co.,* 790 P.2d 581, 582 (Utah Ct.App. 1990). If a contract is unambiguous, the interpretation of its terms is also a matter of law, *see id.,* which we review nondeferentially for correctness. *See Nova Cas. Co.,* 1999 UT 69 at ¶ 6, 983 P.2d 575.

### ANALYSIS

#### I. Issues of Fact

¶ 12 Appellants first argue that summary judgment was inappropriate because there were disputed issues of material fact. Both Lee and Appellants characterize the trial court's determination that the insurance policy was canceled as a factual matter. To conclude that the Cigna policy was not in effect on the date of the fire, the court relied on facts such as the date Lee received notice the Farmer's policy was canceled and replaced with the Phoenix policy, the date of payment by Appellants of the Cigna premium, and the full refund of the Cigna premium to Lee.

¶ 13 However, from the record here, there appears to be several material factual issues that remain unresolved. The core dispute is whether the Cigna policy was in effect on the date of the fire. The court determined that it was not. In doing so, the court weighed competing facts and assumed the role of fact finder, rather than accepting the facts in the most favorable light for the nonmoving party. *Cf. Nyman,* 966 P.2d at 1212–13.

¶ 14 For example, although Lee denies it, Appellants contend that they talked with a Lee agent about the Phoenix replacement

policy sometime before the fire, but after the cancellation of the Farmer's policy. Viewing this in the light most favorable to Appellants, if notice had indeed been provided to Lee, and yet it later demanded reimbursement for the Cigna premium, the implication is that regardless of notice, the Cigna policy was still in effect. If the policy was not in effect, there would be no reason to demand payment of the premium. Furthermore, Appellants argue the Cigna policy was not canceled until March 10, 1997, when Cigna refunded the premium to Lee. This is in contrast to Lee's argument that the policy was canceled when the Phoenix policy was purchased, as alleged in an affidavit. Moreover, there is no conclusive evidence in the record of the sequence of events regarding the issuance or cancellation of the Phoenix and Cigna policies. Rather, these issues are in dispute, or are simply unknown,[7] thus making this matter inappropriate for summary judgment.

¶ 15 Instead of recognizing these unresolved issues as genuine issues of material fact, the court concluded that the Cigna policy was not in effect on the date of the fire. To reach this conclusion, the court had to evaluate factual matters and weigh the evidence. Summary judgment is appropriate only when there are no disputed material facts. *See id.* at 1212. Here, the effective date of the Cigna policy was a highly contested and disputed fact, and thus inappropriate for the court to determine as a factual matter.

#### II. Contract Interpretation

¶ 16 Appellants also argue that the trial court erred in determining that the Cigna policy was canceled as of October 15, 1996 by its own terms. Although not clear from the court's findings of fact and conclusions of law, the court concluded the policy was canceled before the fire in part because of the court's interpretation of the contract terms.

#### A. Lee's Version of the Insurance Policy

¶ 17 Lee introduced a version of the Cigna master policy that included an "other insur-

---

7. In fact, the trial court recognized that "there's some questions which have not been completely answered in the Court's mind."

ance" clause stating: "If the insurance provided by this policy is also provided by other insurance, the coverage under this policy will terminate as of the effective date of the other insurance and the applicable premium refunded." Lee argues that this clause controls the effective dates of the Cigna policy, and leads to the conclusion that the Cigna policy was void at its inception because the Phoenix policy was retroactively effective as of October 15. The court apparently accepted this argument, determining that this clause is unambiguous and controlled the contract.

¶ 18 However, "[c]ontracts 'should be read as a whole, in an attempt to harmonize and give effect to all of the contract provisions.'" *Lee v. Barnes*, 1999 UT App 126, ¶ 11, 977 P.2d 550 (citation omitted). "Provisions which are apparently conflicting are to be reconciled and harmonized, if possible, by reasonable interpretation so that the entire agreement can be given effect." *Big Cottonwood Tanner Ditch Co. v. Salt Lake City*, 740 P.2d 1357, 1359 n. 1 (Utah Ct.App.1987). Moreover, "any ambiguity or uncertainty in the language of an insurance policy must be resolved in favor of coverage." *LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858 (Utah 1988). Also, because the policy is drawn by the insurer, any ambiguity must be construed against the insurer. *See id.*

¶ 19 With these principles in mind, we find conflicting provisions and ambiguity regarding the coverage of the policy when we look to the master policy as a whole. Lee argues that the Cigna policy was canceled because the Phoenix insurance provided the same coverage as the Cigna policy, and thus the "other insurance" clause controlled and operated to cancel the Cigna insurance. However, the "insurance provided by this [Cigna] policy" is arguably excess insurance for second mortgages or trust deeds, and thus not the same as the coverage under the Phoenix policy. The Cigna master policy, when read as a whole, appears to provide supplemental coverage for second mortgages or trust deeds, and to provide benefits even to the debtor. First, the policy specifies that the debtor "shall be considered an additional insured," and that any loss under the policy will be "made payable to the Insured and/or Borrower as their interest may appear." Thus, Appellants are covered, at least in some measure, as insured parties under this contract.

¶ 20 Second, the Cigna master policy provides for insurance specifically for "second mortgages," and specifically as supplemental insurance. Under the "Second Mortgages" section, the policy states:

Coverage under this Section will be extended to insure Real Property as security for a second mortgage.

If there is other coverage in force insuring such Real Property, the *other coverage is primary* and this Company will pay only *the excess over that paid by the Primary Carrier* up to the amount listed on the Reporting Form or individual Evidence of Insurance—but the total of all insurance, primary and excess will not exceed 100% of the Replacement Cost of the structure.

Coverage as provided under this policy, as it applies to Second Mortgage loans, will follow the settlement of the First Mortgage (Primary) Insurer.

(Emphasis added.)

¶ 21 Under this clause, it appears clear that supplemental insurance was contemplated for second trust deeds or mortgages. Instead of stating that this provision is inoperable if there is other insurance, which would be consistent with Lee's interpretation of the "other insurance" clause, this section merely identifies such other insurance as primary. The clause contemplates the situation when a primary policy would not be enough to fully reimburse expenses for damages, especially when a second mortgage or trust deed exists, and thus provides supplemental coverage.

¶ 22 Appellants' circumstances seem to fall squarely within this situation. Appellants had primary insurance on their home which did not pay for the complete reconstruction cost, instead leaving a gap between the depreciated value and the actual replacement cost. The gap in the Phoenix coverage appears to be covered by the Cigna second mortgage clause, stating that Cigna will pay only for that which the primary policy does

not, and capping coverage at the full replacement value of the structure.

¶ 23 Overall, reading the policy as a whole and resolving uncertainty in favor of coverage, the second mortgage section can reasonably be interpreted as providing supplemental coverage when another insurance policy is in force. The cancellation language of the "other insurance" clause is not clear in its operation. However, if another supplemental policy or a policy specifically protecting the second mortgage or trust deed were in force, the Cigna policy would arguably be canceled as superfluous. Such supplemental insurance would be "insurance provided by this policy," and thus operate to terminate the Cigna policy. The Phoenix policy, however, as primary coverage, was not "insurance provided by this [Cigna] policy."

¶ 24 In sum, because the policy is ambiguous, especially regarding the operation of the "other insurance" clause, the court erred in concluding the policy was canceled under its terms.

### B. Multiple Versions of the Insurance Policy

¶ 25 A more basic unresolved issue of fact is which of two versions of the Cigna insurance policy was in effect. Appellants produced a version of the Cigna master policy that had a different "other insurance" clause which would further support the policy as supplemental coverage. This version, labeled form ZZ–1220 (⅔₀), contains the same language in most sections, but states under the "other insurance" clause: "If there is any other valid and collectible insurance which would attach if the insurance provided under the Agreement had not been effected, *this insurance shall apply only as excess* and in no event as contributing insurance, and then only after all other insurance has been exhausted." (Emphasis added.)

¶ 26 Thus, under this contract, the coverage of the Cigna policy can clearly be construed as supplemental. No cancellation is contemplated in the event of additional insurance. The same limits apply for the coverage through the other insurance clause and through the same "second mortgage" section.

¶ 27 This version of the policy was attached to the outline of the Cigna Master Policy for Lee. It was specifically incorporated into the policy under a section "Forms & Endorsements Which Are Made Part of this Policy at Time of Issue," identifying the form ZZ–1220 ed. 2/90. Counsel for Lee could not explain to the trial court the discrepancy in the two versions, and seemed unaware that two versions existed. No evidence was before the court regarding any change in the policy, or if any, the effective date of such a change. Hence, because there are two versions of the master policy and it is unresolved regarding which was in effect at the relevant time, summary judgment was inappropriate.

¶ 28 We conclude that summary judgment is inappropriate here both because the contract relied upon by the court is ambiguous as a matter of law, and because two versions of the contract exist, thus creating a genuine issue of material fact as to which version controls.

### CONCLUSION

¶ 29 In sum, there are genuine issues of material fact yet to be resolved. The core dispute is whether the Cigna policy was in effect as of the date of the fire. This is a dispute which should go to a fact finder. Furthermore, it is not clear which of the two versions of the master policy was in effect. Finally, the insurance policy containing the cancellation provision if other insurance is in effect is ambiguous because of conflicting provisions, and should be read in favor of finding coverage.

¶ 30 Because factual disputes exist and the policy is ambiguous, summary judgment was inappropriate. Accordingly, we reverse.

¶ 31 WE CONCUR: NORMAN H. JACKSON, Associate Presiding Judge, and GREGORY K. ORME, Judge.