1999 UT 110

Clarence H. **BIDDLE,** Paul G. Biddle, David E. Christensen, Jess Decaria, Orville L. Greathouse, Lola Morgan, and Harold E. Scott, Plaintiffs and Appellants,

v.

**WASHINGTON TERRACE CITY,** a Utah municipality, Richard E. Jackson, David Berg, Paula Hensley, Marian Jensen, and Robert Tucker, Defendants and Appellees.

No. 990484.

Supreme Court of Utah.

Dec. 28, 1999.

Brad C. Smith, Ogden, for plaintiffs.

Jody K. Burnett, Salt Lake City, and Stephen F. Noel, Ogden, for defendants.

DURHAM, Associate Chief Justice:

¶ 1 The plaintiffs below, (collectively "Biddles"), appeal a decision upholding the validity of Washington City Terrace Ordinance 4–98 as an appropriate procedure to implement a voter-approved change of municipal government. We affirm the judgment of the trial court.

## BACKGROUND

¶ 2 The citizens of Washington Terrace City voted on November 3, 1998, to abandon their traditional form of government and to adopt an optional council-mayor form of government pursuant to the Optional Forms of Municipal Government Act, sections 10–3–1201 *et seq.* of the Utah Code ("Optional Forms Act"). An initiative petition had been circulated prior to the election stating that "[t]he mayor and two (2) at large city council members elected at the 1997 municipal elections shall not be required to stand again for election until the regular 2001 municipal elections, and shall retain their positions in the Mayor–Council optional form of government." The final sentence of the initiative petition contained a "voter beware" clause indicating that "[t]he invalidation of any clause or provision herein shall not invalidate any other clause or provision herein." Having obtained the requisite number of registered-voter signatures, a proposition was placed on the November 3, 1998 general election ballot by a vote of the Washington Terrace City Council on June 18, 1998.

¶ 3 Counsel for Biddles prepared an Order for Form of Ballot Title and presented it to this court. On September 1, 1998, this court filed an Order that set forth the Ballot Title containing the language of the proposition:

## Proposition No. 1

It is proposed by petition of registered voters that Washington Terrace City reorganize from its present manager form of government to a mayor-council optional form of government. The initiative proposes a nine (9) member city council. Seven of the nine council seats would be elected from each of the seven voting districts within the city. Two of the nine council seats would be "at-large" seats elected by the city as a whole. As the city expands in population and additional voting districts are created, an existing "at-large" seat will be assigned to the new voting district as needed.

Shall Washington Terrace, Utah adopt the Mayor–Council Optional form of government?

For _____

Against _____

¶ 4 After voter approval of the proposition, the City Council enacted Ordinance 4–98, entitled the Government Transition Procedures Ordinance ("Ordinance"), in order to implement the electorally-approved change in government. The Ordinance outlined transition procedures to the new council-mayor optional form of government that would take effect, pursuant to section 10–3–1208 of the Utah Code, on January 3, 2000. While the Ordinance allowed current council members to serve out their unexpired terms in the new government, it precluded the current mayor from continuing in office as mayor, unless he ran and was elected as such in an election under the new government. The Ordinance provisions contained the following:

2.1 The office of Mayor under the current traditional form of government shall cease upon the effective date and time of the new government, and the new office of mayor, under the new government shall then begin at 12 o'clock noon on the first Monday of January, 2000.

2.2 The new office of mayor under the new government shall be filled by election by the citizens of the City of Washington Terrace on the first Tuesday following the first Monday of November 1999 (November 2, 1999).

2.3 The current mayor under the current traditional form of government shall not be allowed to continue into the new government as mayor, unless he runs and is elected to assume that new office of mayor under the new government.

¶ 5 Biddles filed suit in the trial court seeking a declaration that the mayor of Washington Terrace City not be required to run for election for the new office of mayor. Relying on the initiative petition, which expressly called for Mayor Richard Jackson to continue as mayor in the new government, Biddles sought assurance that the mayor could choose to serve out the remainder of his current term.

¶ 6 Cross-motions for partial summary judgment were filed in the trial court to determine whether the Ordinance was consistent with state statute in requiring Mayor Jackson to run for election for the new office of mayor under the new government. The City argued that the issue was one of statutory construction, requiring the reconciliation of the Ordinance with the Optional Forms Act. Arguing that the language of the initiative petition constituted the controlling law, Biddles requested that the trial court find that the Ordinance was invalid to the extent that it was inconsistent with the terms of the initiative petition.

¶ 7 The trial court granted the City's motion for partial summary judgment, finding it proper to reconcile the initiative petition with the Optional Forms Act, rather than with the Ordinance, and finding that the Ordinance was consistent with the Optional Forms Act. Pursuant to a joint stipulation and motions by the parties, the trial court dismissed the remainder of Biddles' claims, after which Biddles initiated this appeal.

## STATEMENT OF ISSUES AND STANDARD OF REVIEW

■ ¶ 8 The issue before this court is whether the trial court correctly concluded that the Ordinance properly implemented the optional council-mayor form of government under the terms of the Optional Forms Act. Because this is a question of statutory interpretation, we review the trial court's judgment for correctness. *See MacKay v. Hardy*, 896 P.2d 626, 630–31 (Utah 1995); *Durham v. Duchesne County*, 893 P.2d 581, 584 (Utah 1995); *State v. Lowder*, 889 P.2d 412, 413 (Utah 1994).

## ANALYSIS

1. *History of Municipal Government in Utah*

¶ 9 In *Martindale v. Anderson*, 581 P.2d 1022 (Utah 1978), this court examined the history of municipal government in Utah and the context within which the Optional Forms Act emerged. A review of that history, as set forth in *Martindale*, is helpful for present purposes.

■ ¶ 10 The Utah Constitution expressly invests the legislature with power to

create municipalities within its borders. *See id.* at 1024 (citing Utah Const. art. XI, § 5). All municipal powers derive from the legislature, and the legislature has traditionally invested both legislative and executive power in a solitary governing body varying in name, depending upon the population classification of the municipality. *See id.* (citations omitted). Where a single body exercises all governing power, it has been described as "government by committee." *Id.* Mayors or managers under this system have no significant powers independent from the council and are viewed as merely titular heads of municipal government. *See id.*

¶ 11 In 1959, the legislature departed from this unitary approach by enacting the Strong Mayor Form of Government Act ("Act") which gave first and second class cities the option of a significantly different form of government than the "government by committee" approach. *See id.* The major difference in the strong mayor form is a formal separation of powers: the executive power resides with the mayor and the legislative powers with the council. *See id.* The legislative intent of the Act was to provide an optional form of government based upon state and federal models. *See id.*

¶ 12 The Act was repealed in 1975 and replaced with provisions (the "1975 Act") substantially similar to the current Optional Forms Act at issue in this appeal. *See id.* at 1025. The 1975 Act made available to all cities, regardless of population classification, two additional options: the council-manager and the council-mayor forms of municipal government. *See id.* In 1977, the legislature repealed and recodified the 1975 Act. *See id.* at 1026. Under the recodified act, the legislature clarified its intent to distinguish the traditional system—where power is vested solely in a single *governing body*— from the new council-mayor system—where the vested power is shared by the *mayor and the council. See id.* It stated the distinction as follows:

> Each municipality shall have a governing body which shall exercise the legislative and executive powers of the municipality *unless the municipality is organized with*

*separate executive and legislative branches of government.*

Utah Code Ann. § 10–3–101 (1977) (emphasis added). Furthermore, the recodification emphasized the legislature's intent to clearly separate executive and legislative powers:

> The optional form of government known as the council-mayor form vests the government of a municipality which adopts this form in two separate, independent, and equal branches of municipal government; the executive branch consisting of a mayor and the administrative departments and officers; and the legislative branch consisting of a municipal council.

Utah Code Ann. § 10–3–1209 (1977).

¶ 13 Thus, the express legislative intent behind the council-mayor form of government was to allow for a form of government substantially different from the traditional form of government.

### 2. *Rules of Statutory Construction*

¶ 14 When interpreting a statute, it is axiomatic that this court's primary goal "is to give effect to the legislature's intent in light of the purpose that the statute was meant to achieve." *Evans v. Utah,* 963 P.2d 177, 184 (Utah 1998) (citation omitted). In circumstances like those in this case, where the operation of two statutory provisions is in conflict, the more specific provision will govern over that which is more general. *See Millett v. Clark Clinic Corp.,* 609 P.2d 934, 936 (Utah 1980). This court looks first to the plain language of a statute when deciding questions of statutory interpretation and assumes that each term was used advisedly by the legislature. *See MacKay v. Hardy,* 896 P.2d 626, 631 (Utah 1995) (citation omitted). Similarly, statutory construction presumes that the expression of one should be interpreted as the exclusion of another. *See Field v. Boyer Co.,* 952 P.2d 1078, 1086–87 (Utah 1998) (Stewart, J., concurring in part, dissenting in part). Therefore, omissions in statutory language should "be taken note of and given effect." *Kennecott Copper Corp. v. Anderson,* 30 Utah 2d 102, 514 P.2d 217, 219 (1973).

¶ 15 Applying these rules of statutory construction to this case, we must decide, according to the specific governing provisions of the Optional Forms Act, whether the Ordinance provided legal transition procedures from the old to the new form of government.

### 3. Validity of Petition Language Under State Law

¶ 16 The first question is whether the Council properly deviated from the text of the initiative petition after voter approval of the initiative in a general election. Biddles argue, first, that the specific language of the initiative petition is the controlling law of Washington Terrace according to local initiative procedures outlined in section 20A–7–510(3) of the Utah Code ("General Election Code") and, second, that to the extent that the Ordinance did not faithfully implement every aspect of the initiative petition as passed by the voters in the November 1998 election, the Ordinance is invalid.

¶ 17 While the General Election Code requires the local legislative body to declare the voter-approved initiative "in full force and effect as the law of the local jurisdiction," Utah Code Ann. § 20A–7–510(3)(a)(ii) (1998), we do not agree with Biddles' argument that the Ordinance is invalid because it departed from the language of the initiative petition.[1] Section 20A–7–511 clearly contemplates granting municipal councils the power to amend laws recently approved by the electorate "at any meeting after the law has taken effect." Id. § 20A–7–511. Further, we agree with the trial court's findings that the initiative petition must be reconciled with the Optional Forms Act, and to the extent that the initiative petition is inconsistent with it, the Optional Forms Act controls. The municipal council rightly concluded that the petition's provision allowing the mayor to continue in office was in direct conflict with the Optional Forms Act's transition provisions. Thus, in amending the provisions of the initiative petition, the Council correctly exercised its power to require procedures that would bring the petition within the legal limits prescribed by the governing Optional Forms Act.

¶ 18 While we do not believe that a deliberate misrepresentation was made in the petition (it appears more likely that the drafters of the petition did not understand that the mayoral process they desired was inconsistent with state law), it may well have been the case that some voters were "led down the primrose path" by the initiative petition's language. The drafters of the initiative petition outlined a transition procedure that was not legally sound under the Optional Forms Act, and perhaps some voters would not have signed the petition or voted for the change if they had known that the incumbent mayor could not legally continue in office. However, the voters were given warning that the invalidation of any part of the petition would not constitute invalidation of the whole, and were thus given fair notice of possible changes to the terms contemplated in the petition.

### 4. Effect of Council–Mayor Form of Government on Mayoral Selection Process

¶ 19 Having concluded that the council appropriately exercised its power to amend this aspect of the Ordinance adopted by the voters upon approval of the initiative petition, we next address the question of whether the Ordinance's requirement that the current mayor run for election under the new council-mayor form of government is in accordance with the Optional Forms Act.

¶ 20 Biddles argue that the mayor is definitionally a council member under section 10–3–105 of the Utah Code[2] and should be allowed to serve out the remainder of his term in the new government according to section 10–3–1208 of the Optional Forms Act.

---

1. The initiative petition contained a provision stating that the mayor could retain his position notwithstanding the change in government form. The Ordinance provision amended the petition language by requiring the mayor to run for election in order to hold office in the new government.

2. At the time of this case, section 10–3–105 read: "The governing body of cities of the third class shall be a council composed of six members, *one of whom shall be the mayor and the remaining five shall be councilmembers.*" Utah Code Ann. § 10–2–105 (1997) (emphasis added).

Furthermore, they argue that sections 10–3–202[3] and –205[4] of the Utah Code mandate that, once elected, the mayor is entitled to serve out his original four-year term despite the specific provisions to the contrary enumerated in the Optional Forms Act.

¶ 21 The relevant provision of the Optional Forms Act is section 10–3–1208, which explicitly provides for the election of new officers upon electoral approval of an optional form of government:

> Upon approval of an optional form of government by a municipality pursuant to this part, election of officers shall be held in the municipality on the Tuesday next following the first Monday in November following approval of the optional form, or on the same day in the year next following, whichever day falls in an odd-numbered year. The new government shall become effective at 12 o'clock noon on the first Monday of January following the election of officers. Elected officers of the municipality *whose positions would no longer exist* as a result of the adoption of a form of government provided for in this act shall be paid at the same rate until the date on which their terms would have expired, if they hold no municipal office in the new government for which they are regularly compensated. *At their option, former ... council members of third class cities ... may serve as one of the council members for the remainder of their term.*

Utah Code Ann. § 10–3–1208 (1999) (Emphases added). Based upon this provision, plaintiff's argument is flawed in five respects.

¶ 22 First, in harmonizing section 10–3–105 with section 10–3–1208 and interpreting the definition of council members in context, we conclude that the mayor is not a council member. While section 10–3–105 refers to the traditional governing body of a third class city as a "council," the statute does not equate the position of mayor with that of the remaining council members. Furthermore, under rules of statutory construction, the expression of one thing is the exclusion of another. *See Field,* 952 P.2d at 1086–87 (Stewart, J., concurring in part, dissenting in part); *Kennecott,* 514 P.2d at 219. Section 10–3–1208 creates an exception that provides the "option" to "former council members" of serving out the remainder of their term as "council members" in the new government. No such provision is made for the "former" mayor to continue as the new mayor. Not only does the statute exclude the mayor in this exception, but the exception language also uses the term "council members," instead of "members of the governing body," which would have included the mayor under section 10–3–105. We therefore conclude that while the legislature allowed council members to serve the remainder of their terms in the new government, it did not provide the same opportunity to the mayor. Rather, it prescribed an election for the mayor under the new government.

¶ 23 Second, it is instructive to compare section 10–3–1208 with the transition procedures provided by the legislature when a city becomes a city of another class. Section 10–2–303 provides that "each municipal officer in office at the time of the change shall continue as an officer until that officer's term expires and a successor is duly elected and qualified." Utah Code Ann. § 10–2–303(1)(e) (1999). If the legislature had intended parallel transition procedures under the Optional Forms Act, it would have used equally clear language.

¶ 24 Third, section 10–3–1208 specifically contemplates that there will be offices that will no longer exist as a result of the adoption of the new form of government. The Optional Forms Act provides for compensation to those officials who do not hold a position in the new government, thereby

---

**3.** Section 10–3–202 reads: "Each elected officer of a municipality shall hold office for the term for which he is elected and until his successor is chosen and qualified, unless the office becomes vacant under Section 10–3–301." *Id.* § 10–3–202 (1999).

**4.** Section 10–3–205 reads, in pertinent part:

> In cities of the third class, the election and terms of office shall be as follows:
> (1) The offices of mayor and two councilmen shall be filled in municipal elections held in 1977. The terms shall be for four years. These offices shall be filled every four years in municipal elections....

*Id.* § 10–3–205(1).

avoiding unfairness and financial hardship. The mayor's position under the traditional form of government is precisely one of those positions that no longer exists under the new form of government.

¶ 25 Fourth, we hold that section 10–3–1208 controls on the issue of the mayor holding office for the four-year term to which the mayor was elected, not sections 10–3–202 and –205. The intent behind section 10–3–202 is to prevent improper removal of elected officials against the express will of the electorate who voted them into office. In the instant case, the electorate of Washington Terrace City affirmatively voted to change their form of government, which action consequently cut short the term of office for the former mayor. That process is not the same as "removing" an elected official.

¶ 26 Finally, beyond the plain language of the Optional Forms Act, there are other indications that the legislature intended the result we reach here. As indicated above, the legislature intended to create a completely new form of government with separation of powers between the legislative and executive branches, thus essentially establishing a fundamentally different office under the new form of government, although giving it the same name, "mayor," as a position existing under the traditional form.[5] Another indication is found in section 10–3–1221, which instructs that the "first mayor elected" under the new council-mayor form of government shall draft and submit for review and approval of the City Council a proposed ordinance establishing administrative departments and defining their functions and duties. Utah Code Ann. § 10–3–1221 (1999). The legislature intended to invest the first mayor elected with the power to create administrative departments at the beginning of the newly established government in order to establish a functioning executive branch. This language gives rise to the presumption that the legislature intended that the executive branch be organized sooner rather than later. If the legislature had intended former mayors to serve out their terms, this provision would be ineffective.

## CONCLUSION

¶ 27 We hold that under the Optional Forms Act, the former mayor of Washington Terrace City, Richard Jackson, is one of the "[e]lected officials of the municipality whose positions ... no longer exist as a result of the adoption of a form of government provided for in this act." Utah Code Ann. § 10–3–1208 (1999). The position of mayor under the newly created council-mayor optional form of government is in effect a new position structurally and substantively, and it must be filled by election as provided in the Optional Forms Act. Affirmed.

¶ 28 Chief Justice HOWE, Justice ZIMMERMAN, Justice RUSSON, and Judge ORME concur in Associate Chief Justice DURHAM's opinion.

¶ 29 Having disqualified himself, Justice STEWART does not participate herein; Court of Appeals Judge GREGORY K. ORME sat.

---

5. In concluding the office is fundamentally different, despite the common nomenclature, we emphasize that in the traditional form, the office of mayor contemplates limited functions as member of the council, while under the Optional Forms Act, the mayor does not serve on the council at all, but rather has plenary responsibility for a distinct executive branch of municipal government.