2001 UT App 139

Namvar **TAGHIPOUR** and Danesh Rahemi, **M.D.**, individuals; and Jerez, **Taghipour, and Associates, LLC**, a Utah limited liability company, Plaintiffs and Appellants,

v.

Edgar C. **JEREZ**, an individual; and Mount Olympus Financial, **L.C.**, a Utah limited liability company, Defendants and Appellees.

No. 20000047–CA.

Court of Appeals of Utah.

April 26, 2001.

---

Bruce R. Baird, Baird & Jones, and Dean H. Becker, Salt Lake City, for Appellants.

Blake S. Atkin and Jonathan Hawkins, Atkins & Lilja, Salt Lake City, for Appellees.

Before Judges BILLINGS, ORME, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Plaintiffs Namvar Taghipour, Danesh Rahemi, M.D., and Jerez, Taghipour and Associates, LLC, appeal from an order dismissing their claims against defendant Mt. Olympus Financial, L.C. (Mt. Olympus). We affirm.

## BACKGROUND

¶ 2 On August 30, 1994, Taghipour, Rahemi, and co-defendant Edgar Jerez (Jerez) formed Jerez, Taghipour and Associates, LLC (the LLC). The group formed the LLC to purchase and develop a parcel of real estate (the Property) under a joint venture agreement. The LLC's Articles of Organization listed Jerez as a LLC member and a manager, while its Operating Agreement

provided that no loan could be contracted on behalf of the LLC without a resolution approved by its members.

¶ 3 On August 31, 1994, the LLC acquired the Property. On January 10, 1997, Jerez, unbeknownst to the LLC's other members or managers, unilaterally entered into a loan agreement for $25,000 with Mt. Olympus on behalf of the LLC. To secure the loan, Jerez executed and delivered a trust deed on the Property to Mt. Olympus. Subsequently, Mt. Olympus dispersed $20,000 of the funds to Jerez and kept the remaining $5,000 for various fees. Jerez apparently misappropriated the $20,000. The LLC, unaware of the loan, ultimately defaulted on it and Mt. Olympus foreclosed on the Property.

¶ 4 On June 18, 1999, plaintiffs sued Mt. Olympus and Jerez, asserting claims against Mt. Olympus for: (1) declaratory judgment, (2) negligence, and (3) partition. In response, Mt. Olympus filed a motion to dismiss. The trial court granted Mt. Olympus's motion, ruling that pursuant to Utah Code Ann. § 48–2b–127(2) (1998), the documents executed by Jerez were binding upon the LLC. Plaintiffs timely appealed.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 "The propriety of a dismissal based on Utah R. Civ. P. 12(b)(6) is a question of law; therefore we review the [trial] court's ruling for correctness." *Stokes v. Van Wagoner*, 1999 UT 94,¶ 6, 987 P.2d 602.

¶ 6 Plaintiffs argue the trial court's interpretation of section 48–2b–127(2) was in error, because a manager cannot unilaterally bind a limited liability company when the company's operating agreement or articles of organization require a majority vote or a resolution before undertaking such an act. We review questions of statutory interpretation for correctness, according no deference to the trial court's conclusions. *See Adkins v. Uncle Bart's, Inc.*, 2000 UT 14,¶ 11, 1 P.3d 528.

¶ 7 Plaintiffs next argue the trial court erred by ruling, as a matter of law, that Mt. Olympus had taken the steps necessary to determine Jerez was a LLC manager. We review a trial court's rulings of law for

correctness. *See Munford v. Lee Servicing Co.*, 2000 UT App 108,¶ 10, 999 P.2d 23.

¶ 8 Finally, plaintiffs argue the trial court erred by dismissing their partition claim against Mt. Olympus. This also presents a question of law, which we review for correctness. *See id.*

## ANALYSIS

A. Statutory Interpretation of Utah Code Ann. § 48–2b–127

¶ 9 Plaintiffs argue the Mt. Olympus loan agreement, unilaterally executed by Jerez on behalf of the LLC, is invalid because the LLC's Operating Agreement requires membership approval before such an undertaking. Plaintiffs assert that section 48–2b–127(2), a Utah Limited Liability Act provision, requires such a result.

¶ 10 The rules of statutory construction require that we look "first to the plain language of a statute ... and assume[ ] that each term was used advisedly by the [L]egislature." *Biddle v. Washington Terrace City*, 1999 UT 110,¶ 14, 993 P.2d 875. Further, "it is well settled that a more specific [statutory] provision always takes precedence over a more general [statutory] provision." *State v. Hinson*, 966 P.2d 273, 277 (Utah Ct.App.1998); *see also Southern Utah Wilderness Alliance v. Board of State Lands & Forestry*, 830 P.2d 233, 235 (Utah 1992).

¶ 11 In the present matter, plaintiffs argue that Utah Code Ann. § 48–2b–125(2)(b) (1998) and Utah Code Ann. § 48–2b–127(2) (1998) should be read in harmony, and therefore, section 48–2b–125(2)(b)'s restrictions on manager authority should be incorporated into section 48–2b–127(2). In pertinent part, section 48–2b–125(2)(b) states: "If the management of the limited liability company is vested in a manager or managers, any manager has authority to bind the limited liability company, *unless otherwise provided in the articles of organization or operating agreement.*" Utah Code Ann. § 48–2b–125(2)(b) (1998) (emphasis added). In contrast, section 48–2b–127(2) states: "Instruments and documents providing for the acquisition, mortgage, or disposition of prop-

erty of the limited liability company shall be valid and binding upon the limited liability company if they are executed by one or more managers." *Id.* § 48–2b–127(2).

¶ 12 The plain language of section 48–2b–127(2) provides no limitations on a manager's authority to execute specified instruments and documents, and thus, bind the limited liability company. Further, assuming, as we must, that "each term [in section 48–2b–127(2)] was used advisedly by the [L]egislature," *Biddle,* 1999 UT 110 at ¶ 14, 993 P.2d 875, we find no reason to suggest that had the Legislature intended section 48–2b–127(2) to include the same restrictions set forth in section 48–2b–125(2)(b), the Legislature would have omitted those restrictions.

¶ 13 Additionally, plaintiffs' argument ignores the well-established rule of construction that specific statutory provisions prevail over general statutory provisions. *See Hinson,* 966 P.2d at 277. Section 48–2b–127(2) states, in no uncertain terms, "[i]nstruments and documents ... *shall be valid and binding* upon the limited liability company if they are executed by one or more managers." Utah Code Ann. § 48–2b–127(2) (1998) (emphasis added). Accordingly, the specific requirements of section 48–2b–127(2) must control over the general application of section 48–2b–125(2)(b)'s restrictions.

■ ¶ 14 Finally, we acknowledge plaintiffs' concern that "the documents listed in [section] 48–2b–127 have the greatest potential for damage to a limited liability company because they are encumbering the property of the limited liability company." However, "[i]t is the power and responsibility of the [L]egislature to enact laws to promote the public health, safety, morals, and general welfare of society ... and [we] will not substitute our judgment for that of the [L]egislature with respect to what best serves the public interest." *Bastian v. King,* 661 P.2d 953, 956 (Utah 1983); *see also Redwood Gym v. Salt Lake County Comm'n,* 624 P.2d 1138, 1141 (Utah 1981) (stating that "it is not the function of [appellate] court[s] to evaluate the wisdom or practical necessity of legislative enactments"); *State v. Mason,* 94 Utah 501, 509, 78 P.2d 920, 923 (1938) (stating that the

judiciary "cannot supplant [the Legislature's] judgment" with its own).

¶ 15 Furthermore, we can conceive of several reasons why the Legislature might choose not to expand the protections for stockholders of a limited liability company in transactions involving the mortgage of real property. These reasons may include the need to facilitate transactions involving the transfer of title to property and mortgages from the original parties to new parties, and the limited access these new parties have to organic documents not revealed in a title search.

¶ 16 It is not necessary for our purpose, however, that we identify a specific basis for the Legislature's decision. Rather, all that is required is that we acknowledge the Legislature's right to exercise its judgment. It is not for us to evaluate, as plaintiffs would have us do, the wisdom of the Legislature's choice in light of alternative courses of action. Accordingly, we find no error in the trial court's interpretation of section 48–2b–127(2).

B. Requirements of Utah Code Ann. § 48–2b–127(2)

■ ¶ 17 Plaintiffs next argue the trial court erred by ruling, as a matter of law, that Mt. Olympus had taken the steps necessary to determine Jerez was a LLC manager. Plaintiffs contend the loan agreement was "invalid because [Mt.] Olympus failed to determine that Jerez ... did not have the power to take the actions he did under the [LLC's] Articles [of Organization] and Operating Agreement." Mt. Olympus, however, correctly concluded that Jerez was a manager of the LLC, and section 48–2b–127(2) requires nothing more. Accordingly, the trial court correctly determined that Mt. Olympus took the steps necessary to determine Jerez was a manager of the LLC, and therefore, satisfied the requirements of section 48–2b–127(2).

C. Partition

■ ¶ 18 Finally, plaintiffs argue the trial court erred by dismissing their claim for partition. After reviewing the trial memoranda of both parties, the trial court found

section 48–2b–127(2) dispositive and dismissed plaintiffs' claims.[1] Following dismissal, the record in this matter lacks an objection or any other attempt by plaintiffs to obtain a specific ruling on their partition claim. "As a general rule, claims not raised before the trial court may not be raised on appeal." *State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346. In addition, we note that plaintiffs' failure to establish that Jerez lacked the authority to bind the LLC also results in the failure of their partition claim. We therefore decline to reach the merits of plaintiffs' partition claim.

¶ 19 The judgment of the trial court is affirmed.

¶ 20 I CONCUR: JUDITH M. BILLINGS, Judge.

ORME, Judge (concurring):

¶ 21 I concur in the court's opinion. In so doing, I must note that I find the policy reflected in sections 48–2b–125(2)(b) and –127(2) to be quite curious. If, as in this case, there are restrictions in a limited liability company's organic documents on its managers' ability to unilaterally bind the company, those restrictions will be effective across the range of mundane and comparatively insignificant contracts purportedly entered into by the company, but the restrictions will be ineffective in the case of the company's most important contracts. Thus, if the articles of organization or operating agreement provide that the managers will enter into no contract without the approval of the company's members, as memorialized in an appropriate resolution, the company can escape an unauthorized contract for janitorial services, coffee

supplies, or photocopying, but is stuck with the sale of its property for less than fair value or a loan on unfavorable terms.

¶ 22 Surely this is at odds with the expectations of the business community. A manager or officer typically can bind the company to comparatively unimportant contracts, but, as is provided in the Operating Agreement in this case, needs member or board approval to borrow against company assets. Financial institutions know this and are able to protect themselves by insisting on seeing articles of incorporation, bylaws, and board resolutions—or the limited liability company equivalents—as part of the mortgage loan process. A cursory review of such documents in this case would have disclosed that Jerez lacked the authority to bind the company to the proposed loan agreement.

¶ 23 In short, I suspect that the strange result in this case is not so much the product of carefully weighed policy considerations as it is the product of a legislative oversight or lapse of some kind. That being said, I readily agree that the language of both statutory sections is clear and unambiguous and that it is not the prerogative of the courts to rewrite legislation. If the laws which dictate the result in this case need to be fixed, the repairs must come via legislative amendment rather than judicial pronouncement.

1. The trial court ruled that "[t]he [Mt. Olympus loan] documents executed by Mr. Jerez are valid and binding on the [LLC]."