2002 UT 74

Namvar **TAGHIPOUR**, Danesh Rahemi, M.D., and Jerez, Taghipour and Associates LLC, a Utah limited liability company, Plaintiffs and Petitioners,

v.

Edgar C. **JEREZ**, Mt. Olympus Financial, L.C., a Utah limited liability company, and Dean Becker, Defendants and Respondents.

No. 20010450.

Supreme Court of Utah.

July 30, 2002.

30, 1994, to purchase and develop a particular parcel of real estate pursuant to a joint venture agreement. The LLC's articles of organization designated Jerez as the LLC's manager. In addition, the operating agreement between the members of the LLC provided: "No loans may be contracted on behalf of the [LLC] ... unless authorized by a resolution of the [m]embers."

¶ 3 On August 31, 1994, the LLC acquired the intended real estate. Then, on January 10, 1997, Jerez, unbeknownst to the LLC's other members or managers, entered into a loan agreement on behalf of the LLC with Mt. Olympus. According to the agreement, Mt. Olympus lent the LLC $25,000 and, as security for the loan, Jerez executed and delivered a trust deed that conveyed the LLC's real estate property to a trustee with the power to sell the property in the event of default. Mt. Olympus then dispensed $20,000 to Jerez and retained the $5,000 balance to cover various fees. In making the loan, Mt. Olympus did not investigate Jerez's authority to effectuate the loan agreement beyond determining that Jerez was the manager of the LLC.

¶ 4 After Mt. Olympus dispersed the funds pursuant to the agreement, Jerez apparently misappropriated and absconded with the $20,000. Jerez never remitted a payment on the loan, and because the other members of the LLC were unaware of the loan, no loan payments were ever made by anyone, and consequently, the LLC defaulted. Therefore, Mt. Olympus foreclosed on the LLC's property. The members of the LLC, other than Jerez, were never notified of the default or pending foreclosure sale.

¶ 5 On June 18, 1999, Namvar Taghipour, Danesh Rahemi, and the LLC (collectively, "Taghipour") filed suit against Mt. Olympus and Jerez. Taghipour asserted three claims against Mt. Olympus: (1) declaratory judgment that the loan agreement and subsequent foreclosure on the LLC's property were invalid because Jerez lacked the authority to bind the LLC under the operating agreement, (2) negligence in failing to conduct proper due diligence in determining whether Jerez had the authority to enter

Bruce R. Baird, Salt Lake City, for plaintiffs.

Blake S. Atkin, Gregory P. Hawkins, Salt Lake City, for Jerez and Mount Olympus Financial.

Dean Becker, pro se.

On Certiorari to the Utah Court of Appeals

RUSSON, Justice:

¶ 1 On a writ of certiorari, Namvar Taghipour, Danesh Rahemi, and Jerez, Taghipour and Associates, LLC, seek review of the decision of the court of appeals affirming the trial court's dismissal of their causes of action against Mount Olympus Financial, L.C. ("Mt.Olympus"). We affirm.

## BACKGROUND

¶ 2 Namvar Taghipour, Danesh Rahemi, and Edgar Jerez ("Jerez") formed a limited liability company known as Jerez, Taghipour and Associates, LLC (the "LLC"), on August

into the loan agreement, and (3) partition of the various interests in the property at issue. In response, Mt. Olympus moved to dismiss all three claims, asserting that pursuant to Utah Code section 48–2b–127(2), the loan agreement documents are valid and binding on the LLC since they were signed by the LLC's manager. This section provides:

> Instruments and documents providing for the acquisition, mortgage, or disposition of property of the limited liability company shall be valid and binding upon the limited liability company if they are executed by one or more managers of a limited liability company having a manager or managers or if they are executed by one or more members of a limited liability company in which management has been retained by the members.

Utah Code Ann. § 48–2b–127(2) (1998).[1] The trial court granted Mt. Olympus' motion and dismissed Taghipour's claims against Mt. Olympus, ruling that under the above section, "instruments and documents providing for the mortgage of property of a limited liability company are valid and binding on the limited liability company if they are executed by the manager," that the complaint alleges that Jerez is the manager of the LLC, and that therefore the loan documents Jerez executed are valid and binding on the LLC.

¶ 6 Taghipour appealed to the Utah Court of Appeals.[2] Taghipour argued that the trial court's interpretation of section 48–2b–127(2) was in error, inasmuch as it failed to read it in conjunction with Utah Code section 48–2b–125(2)(b), which provides that a manager's authority to bind a limited liability company can be limited by the operating agreement. That section provides in relevant part:

> If the management of the limited liability company is vested in a manager or managers, any manager has authority to bind the limited liability company, unless otherwise provided in the articles of organization or operating agreement.

*Id.* § 48–2b–125(2)(b). The Utah Court of Appeals affirmed the trial court, concluding that the plain language of section 48–2b–127(2) provided no limitation on a manager's authority to execute certain documents and bind a limited liability company, and specifically stated such documents shall be valid and binding upon the limited liability company if executed by one or more managers. *Taghipour v. Jerez*, 2001 UT App 139, ¶ 12, 26 P.3d 885. Further, the court of appeals concluded that this specific statute prevailed over the general statute, section 48–2b–125(2)(b), and that the loan documents executed by Jerez were therefore binding upon the LLC in this case. *Id.* at ¶ 13. It also held that Mt. Olympus did all that it was required to do under section 48–2b–127(2) and that Taghipour waived the right to appeal the dismissal of the partition claim by failing to object to the dismissal of that claim. *Id.* at ¶¶ 12, 17–18. Taghipour petitioned this court for certiorari, which we granted.

¶ 7 Taghipour asks this court to reverse the court of appeals, arguing that (1) sections 48–2b–125(2)(b) and 48–2b–127(2) should be read in harmony to require that managers "be properly authorized to bind the limited liability company in all situations," and therefore Jerez lacked authority to bind the LLC under the operating agreement, and (2) a commercial lender has a due diligence obligation to determine the authority of a manager of a limited liability company before that manager can encumber the assets of the company, which Mt. Olympus failed to do by

1. Since the occurrence of the facts giving rise to this suit, the legislature has revised the Utah Limited Liability Company Act, now entitled the Utah Revised Limited Liability Company Act, which is codified at Utah Code Ann. §§ 48–2c–101 to –1902 (Supp.2001). The Utah Revised Limited Liability Company Act became effective on July 1, 2001. Because we apply the law as it existed at the time of the events giving rise to this suit, *State ex rel. Div. of Forestry, Fire & State Lands v. Tooele County*, 2002 UT 8, n. 2, 44 P.3d 680; *Airport Hilton Ventures v. State Tax Comm'n*, 1999 UT 26, nn. 1–3, 976 P.2d 1197, we apply the Act as it existed before the revised act became effective. Further, because section 48–2b–127 was never amended from the time of its enactment until 2001, we simply cite the 1998 version of the statute for convenience although some of the pertinent facts occurred before that year.

2. This case was transferred to the court of appeals for disposition pursuant to Utah Code section 78–2–2(4) (1996).

neglecting to determine whether Jerez had the authority to bind the LLC.[3] In reply, Mt. Olympus contends that under Utah Code section 48–2b–127(2), Mt. Olympus could properly rely on Jerez's execution of the loan agreement as the manager of the LLC without further inquiry.

## STANDARD OF REVIEW

¶ 8 On certiorari, we review the decision of the court of appeals rather than that of the trial court, *Grand County v. Rogers,* 2002 UT 25, ¶ 6, 44 P.3d 734, and we review the decision of the court of appeals for correctness, *Brookside Mobile Home Park, Ltd. v. Peebles,* 2002 UT 48, ¶ 11, 48 P.3d 968. Additionally, because the paramount issue in this case is a question of statutory construction, it is a question of law that we review for correctness. *State v. Lusk,* 2001 UT 102, ¶¶ 11, 19, 37 P.3d 1103.

## ANALYSIS

¶ 9 The issue in this case is whether the loan agreement documents executed by Jerez, as manager of the LLC, are valid and binding on the LLC under section 48–2b–127(2) of the Utah Limited Liability Company Act (the "Act"), as the statute existed at the time Jerez executed the loan agreement, *see supra* note 1, or whether the documents were not binding on the LLC because, consistent with section 48–2b–125(2)(b) of the Act, the operating agreement effectively denied Jerez the necessary authority to bind the LLC where the agreement provides: "No loans may be contracted on behalf of the [LLC] ... unless authorized by a resolution of the [m]embers." Taghipour reasons that this operating agreement provision precludes Jerez from executing a loan without a resolution of the members since under section 48–2b–125(2)(b) of the Act a manager cannot bind a limited liability company if the articles of organization or operating agreement does not afford the manager the authority to do so.

## I. COMPETING STATUTORY PROVISIONS

¶ 10 To determine whether the loan agreement in this case is valid and binding on the LLC, it must first be determined whether this case is governed by section 48–2b–127(2), which makes certain kinds of documents binding on a limited liability company when executed by a manager, or section 48–2b–125(2)(b), which provides that a manager's authority to bind a limited liability company can be limited or eliminated by an operating agreement.

¶ 11 When two statutory provisions purport to cover the same subject, the legislature's intent must be considered in determining which provision applies. *Jensen v. IHC Hosps., Inc.,* 944 P.2d 327, 331 (Utah 1997). To determine that intent, our rules of statutory construction provide that "when two statutory provisions conflict in their operation, the provision more specific in application governs over the more general provision." *Hall v. State Dep't of Corr.,* 2001 UT 34, ¶ 15, 24 P.3d 958; *see also Biddle v. Washington Terrace City,* 1999 UT 110, ¶ 14, 993 P.2d 875.

¶ 12 In this case, the Utah Court of Appeals, affirming the trial court, concluded that section 48–2b–127(2) was more specific than section 48–2b–125(2)(b), and therefore took precedence over it. *Taghipour,* 2001 UT App 139 at ¶ 13, 26 P.3d 885. However, Taghipour contends that in determining which of the two provisions is more specific, the more restrictive clause is more specific because it is more limiting and "would require authority in all situations." Accordingly, Taghipour contends that section 48–2b–125(2)(b) is the more restrictive, and consequently, the more specific, provision.

¶ 13 The question of which statute the legislature intended to apply in this case is determined by looking to the plain language of the statutes that purport to cover the same subject. *Biddle,* 1999 UT 110 at ¶ 14, 993 P.2d 875; *Jensen,* 944 P.2d at 331. Sec-

---

3. Taghipour does not contend that the court of appeals erred in concluding that Taghipour waived the right to appeal the dismissal of the partition claim, and we therefore will not review that holding.

tion 48–2b–125(2)(b) provides in relevant part:

> If the management of the limited liability company is vested in a manager or managers, any manager has authority to bind the limited liability company, unless otherwise provided in the articles of organization or operating agreement.

Utah Code Ann. § 48–2b–125(2)(b) (1998). In contrast, section 48–2b–127(2) provides:

> Instruments and documents providing for the acquisition, mortgage, or disposition of property of the limited liability company shall be valid and binding upon the limited liability company if they are executed by one or more managers of a limited liability company having a manager or managers or if they are executed by one or more members of a limited liability company in which management has been retained by the members.

*Id.* § 48–2b–127(2).

¶ 14 Section 48–2b–127(2) is the more specific statute because it applies only to documents explicitly enumerated in the statute, i.e., the section expressly addresses "[i]nstruments and documents" that provide "for the acquisition, mortgage, or disposition of property of the limited liability company." *Id.; see also Jensen,* 944 P.2d at 332 (stating that statute was more specific because statute applied "only to wrongful death actions arising out of medical malpractice"); *De Baritault v. Salt Lake City Corp.,* 913 P.2d 743, 747 (Utah 1996) ("[S]ince the Governmental Immunity Act specifically addresses public improvements, it is the law most specific . . . ."). Thus, this section is tailored precisely to address the documents and instruments Jerez executed, e.g., the trust deed and trust deed note. For example, a trust deed is similar to a mortgage in that it secures an obligation relating to real property, *Capital Assets Fin. Servs. v. Maxwell,* 2000 UT 9, ¶ 11, 994 P.2d 201; *First Sec. Bank, N.A. v. Banberry Crossing,* 780 P.2d 1253, 1256 (Utah 1989), and a trust deed "is a conveyance" of title to real property, *First Sec. Bank, N.A.,* 780 P.2d at 1256; *see also* Utah Code Ann. § 57–1–20 (2000), which is a disposition of property as contemplated by the statutory provision. Conversely, section 48–2b–125(2)(b) is more general because it addresses *every* situation in which a manager can bind a limited liability company.

¶ 15 Further, a statute is more specific according to the content of the statute, not according to how restrictive the statute is in application. Indeed, a specific statute may be either more or less restrictive than the statute more general in application, depending upon the intent of the legislature in enacting a more specific statute.

¶ 16 Moreover, if we were to hold that section 48–2b–125(2)(b) is the more specific provision, we would essentially render section 48–2b–127(2) "superfluous and inoperative," *Hall,* 2001 UT 34 at ¶ 15, 24 P.3d 958, because section 48–2b–127(2) would simply restate section 48–2b–125(2)(b) and would therefore be subsumed by section 48–2b–125(2)(b). Accordingly, the court of appeals correctly concluded that section 48–2b–127(2) is more specific, and therefore, the applicable statute in this case.

## II.  VALID AND BINDING LOAN AGREEMENT DOCUMENTS

¶ 17 Section 48–2b–127(2) must be applied to the facts of this case to determine whether the documents are valid and bind the LLC. At the time relevant to this case, section 48–2b–127(2), the statute applicable to the issue in this case, *see supra* ¶¶ 14–16, provided:

> *Instruments and documents providing for the* acquisition, *mortgage,* or disposition *of property of the limited liability company shall be valid and binding upon the limited liability company if they are executed by one or more managers* of a limited liability company having a manager or managers or if they are executed by one or more members of a limited liability company in which management has been retained by the members.

Utah Code Ann. § 48–2b–127(2) (1998) (emphasis added). According to this section, the documents are binding if they are covered by the statute and if executed by a manager. There are no other requirements for such documents to be binding on a limited liability company.

¶ 18 In this case, as Taghipour acknowledges in the complaint and Taghipour's brief on appeal, Jerez was designated as the LLC's manager in the articles of organization. Jerez, acting in his capacity as manager, executed loan agreement documents, e.g., the trust deed and trust deed note, on behalf of the LLC that are specifically covered by the above statute. *See supra* ¶ 14. As such, these documents are valid and binding on the LLC under section 48–2b–127(2). Therefore, the court of appeals correctly concluded that the LLC was bound by the loan agreement and, consequently, that Mt. Olympus was not liable to Taghipour for Jerez's actions.[4]

## CONCLUSION

¶ 19 The court of appeals correctly determined that section 48–2b–127(2) (1998) governs this case, that under this statutory section the loan agreement is valid and binding on the LLC, and that Mt. Olympus did all that was required by statute. Therefore, the court of appeals correctly affirmed the trial court's dismissal of Taghipour's claims against Mt. Olympus. Accordingly, we affirm.

¶ 20 Chief Justice DURHAM, Justice HOWE, Justice WILKINS, and Judge HADFIELD concur in Justice RUSSON'S opinion.

¶ 21 Having disqualified himself, Associate Chief Justice DURRANT does not participate herein; District Judge BEN H. HADFIELD sat.

---

4. Mt. Olympus also contends that it does not owe any due diligence duties to the LLC. Because our discussion of the Utah Limited Liability Company Act is dispositive in this case, we do not address this issue.