**2015 UT App 47**

# THE UTAH COURT OF APPEALS

FIRSTDIGITAL TELECOM, LLC,
Petitioner,

*v.*

PROCUREMENT POLICY BOARD AND BOARD OF REGENTS,
Respondents.

Memorandum Decision
No. 20130899-CA
Filed February 26, 2015

Original Proceeding in this Court

James L. Ahlstrom and Thomas E. Goodwin,
Attorneys for Petitioner

Sean D. Reyes and Brent A. Burnett, Attorneys
for Respondents

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in
which JUDGES GREGORY K. ORME and JAMES Z. DAVIS concurred.

TOOMEY, Judge:

¶1    FirstDigital Telecom, LLC petitions from the decision of the Procurement Policy Board dismissing its appeal for failing to submit a timely bond. We allow the Procurement Policy Board's decision to stand.

¶2    On June 21, 2013, the Utah Board of Regents (the Board) issued a request for proposals (RFP) for telecommunications services. The RFP included a summary of the services sought and a description of the scoring evaluation criteria for proposals. FirstDigital, through President and Chief Executive Officer Wesley McDougal, submitted a proposal in July 2013.

¶3      Although FirstDigital was one of two finalists, on August 12 the Board notified FirstDigital that it was awarding the contract to Integra. On August 14, McDougal contacted the Board employees Bob McRae and Bryce Jex by email, the subject of which was identified as "Proposed meeting to discuss." McDougal stated, "We configured our proposal based on your current set up and usage. We are not sure you or other competitors fully understood the services you are receiving," and complained that the Board did not correctly compare certain technical areas in evaluating the proposals. Finally, McDougal proposed to meet with McRae and Jex to discuss the evaluation comparisons.

¶4      After this meeting, McDougal on August 30 emailed the Board representative Richard Davis to reiterate flaws McDougal perceived in the proposal evaluations. McDougal stated, "[W]e are weighing whether we will file a formal protest to the bid." He added, "[W]e don't believe, among other things, that our network architecture, service nor pricing were evaluated correctly," and suggested the Board "throw out this RFP and allow all carriers to put forth a new proposal and compete on like solutions."

¶5      On September 6, 2013, McDougal again emailed McRae and Davis, this time stating that FirstDigital "ha[d] been forced to examine formal protest provisions contained in the state procurement code." He stated, "As we have examined those provisions, it has become clear that the email . . . on August 14, 2013, constitutes a formal protest in accordance with [Utah Code section] 63G-6a-1602." FirstDigital requested a formal written decision in response to the August 14 email, which it optimistically characterized as the "Protest."

¶6      On September 18, 2013, McRae, acting in his capacity as the Board Protest Officer, responded to the September 6 email, dismissing FirstDigital's protest as untimely. McRae stated,

"You were informed of the Board's decision on 8/12/2013. As a result, your protest should have been made by 8/19/2013."

¶7     He also disputed McDougal's characterization of the August 14 email as a protest because the subject line merely stated "[p]roposed meeting to discuss" and "nowhere in the email was there a statement indicating a protest was being made." McRae pointed out that in a conversation with Davis on August 29, and in McDougal's August 30 email to Davis, McDougal mentioned that FirstDigital was still considering filing a protest, and therefore "your 8/14/13 email did not initiate the protest process." McRae added, "Even if [FirstDigital's] protest had been timely, it failed to establish sufficient grounds for reversing the Board's decision."

¶8     FirstDigital filed an appeal with the chair of the Procurement Policy Board on September 25, 2013. Chair Lois Wiesemann dismissed the appeal on September 27, 2013, because FirstDigital had not paid a security deposit or posted a bond with the Protest Officer. In response, FirstDigital promptly delivered $500 to the Utah Higher Education Assistance Authority (UHEAA). Wiesemann instructed UHEAA to return the $500 check to FirstDigital because the appeal was dismissed and would not be considered.

¶9     FirstDigital again emailed Wiesemann on September 30, asking her to reconsider her decision to dismiss FirstDigital's appeal. In an exchange of emails, the Attorney General's office responded to FirstDigital's request for reconsideration, "[W]e do not see how [Wiesemann] can alter the decision to dismiss" because the clear language of the statute requires that failure to submit a deposit or bond with the appeal will result in a dismissal. The Attorney General's office also specified that "the amount to use in the [security deposit or bond] calculation is $305,000." FirstDigital then filed a security deposit of $15,250 with UHEAA, which was later returned as untimely. FirstDigital appeals.

¶10    FirstDigital argues Wiesemann erred in dismissing its appeal because it substantially complied with the statute when it sent a written appeal to the Procurement Policy Board on September 25, 2013, then paid $500 on September 27 and $15,250 on October 2.[1] Specifically, FirstDigital argues the Procurement Policy Board's decision to dismiss the appeal was arbitrary and capricious because FirstDigital substantially complied by providing a security deposit when it became aware of the correct amount—5% of Integra's proposed contract. It also argues that McRae had an obligation to inform FirstDigital of the deposit amount when he informed it of the right to review. We do not address whether the statute requires strict or substantial compliance, because FirstDigital did not even substantially comply with the statute. Accordingly, we conclude the Procurement Policy Board did not err when it dismissed FirstDigital's appeal.

¶11    To appeal a Protest Officer's dismissal, FirstDigital was required to submit an appeal to the Procurement Policy Board within seven days of the Protest Officer's decision. *See* Utah Code Ann. § 63G-6a-1702(2)(a) (LexisNexis Supp. 2013). The Utah Code also requires that "at the time that the appeal is filed," anyone who files an appeal with the Procurement Policy Board shall "pay a security deposit or post a bond with the protest officer in an amount that is the greater" of $1,000 or 5% of the lowest cost proposed in response to the RFP.[2] *See id.* § 63G-

---

1. Although both parties briefed the Protest Officer's dismissal of FirstDigital's purported protest, this court may review only the final agency action, and we therefore do not address this issue. *See* Utah Code Ann. § 63G-4-403(1) (LexisNexis 2011); *see also id.* § 63G-6a-1802 (LexisNexis Supp. 2013).

2. The legislature has updated and revised the statute effective March 2014. *See* Utah Code Ann. § 63G-6a-1703 (LexisNexis

(continued...)

6a-1703(1). Moreover, "[t]he chair of the [Procurement Policy Board] shall dismiss a protest filed under Section 63G-6a-1702 if the actual or prospective bidder, offeror, or contractor fails to timely pay the security deposit or post the bond required under Subsection (1)." *Id.* § 63G-6a-1703(3). We "may not overturn a finding or decision of the . . . [Procurement Policy Board], unless the finding or decision is arbitrary and capricious or clearly erroneous." *Id.* § 63G-6a-1802(3)(c).

¶12    Although FirstDigital filed the appeal within the seven-day limit, it did not submit the security deposit at the time of the appeal, as required by the statute. Instead, it paid $500 two days *after* the seven-day period for appeal had lapsed, then paid the correct amount of $15,250 a week later. As Wiesemann informed FirstDigital, "No security deposit or bond was received by Mr. McRae at the time FirstDigital filed the appeal." The clear language of the statute required Wiesemann to dismiss the appeal for FirstDigital's failure to submit a timely deposit or bond. *See id.* § 63G-6a-1703(3).

¶13    FirstDigital's $500 deposit was significantly less than the amount required by the statute. *See id.* § 63G-6a-1703(1). It only filed the correct amount on October 2, 2013, a week after the seven-day appeal deadline had lapsed. FirstDigital asserts the Board caused its delay in posting the correct bond amount by not providing the contract amount. But, apart from citing its own counsel's assertions that the Board denied its requests for Integra's contract information, FirstDigital fails to point to any

---

2014) (providing that the security deposit or bond may be filed "before the expiration of the time provided under Subsection 63G-6a-1702(2)"). But we apply the version of the statute in effect "'at the time of the events giving rise to [the proceeding].'" *Salt Lake County v. Holliday Water Co.*, 2010 UT 45, ¶ 41, 234 P.3d 1105 (quoting *Taghipour v. Jerez*, 2002 UT 74, ¶ 5 n.1, 52 P.3d 1252).

evidence to support its claim that before October 1, 2013, "the Board denied FirstDigital's previous attempts to gain access to the Integra contract."

¶14    Moreover, McRae was not obligated to inform FirstDigital of the direct deposit or bond requirement. Utah Code section 63G-6a-1603(3) states, "The [Protest Officer's] decision shall . . . inform the protestor . . . of the right to judicial or administrative review." In his written decision, McRae expressly stated, "FirstDigital has the right to appeal my decision to the chair of the procurement policy board pursuant to Utah Code Ann. § 63G-6a-1702." McRae, therefore, met his obligation to inform FirstDigital of its right to administrative review and directed FirstDigital to section 63G-6a-1702 of the Utah Code, which explicitly provides that an appeal must comply with "the requirements of Section 63G-6a-1703 regarding the posting of a security deposit or a bond." *Id.* § 63G-6a-1702(2)(c).

¶15    In conclusion, the Procurement Policy Board's decision to dismiss FirstDigital's appeal was not arbitrary and capricious or clearly erroneous, and we decline to disturb its decision. Accordingly, we do not address whether the Board acted arbitrarily and capriciously or erred in awarding the telecommunications services contract to Integra.

_____