2004 UT 12

### Nellie THOMAS and Utah Labor Commission, Petitioner,

v.

### COLOR COUNTRY MANAGEMENT dba Sizzler Restaurant, and/or Mid–Century Insurance Company, Respondents.

No. 20020091.

Supreme Court of Utah.

Jan. 30, 2004.

sion") made an initial finding that she qualified for permanent total disability compensation. When Color Country refused to comply with the administrative law judge's accompanying order to initiate temporary subsistence payments, Thomas sought to enforce the order by obtaining an abstract of her award from the administrative law judge and filing it in the district court pursuant to section 34A–2–212 of the Utah Labor Code. The enforcement of the abstract was stayed by the district court while Color Country challenged the issuance of the abstract first before the administrative law judge, who held that he had properly issued the abstract, and later before the Commission's Appeals Board ("Appeals Board"), which did not address the challenge because Color Country had already appealed to the court of appeals. The court of appeals held that the order to initiate subsistence payments was not a "final order" and that, consequently, the abstract of Thomas's award was improperly issued by the administrative law judge. Because the plain language of section 34A–2–413 provides that the initial finding of permanent total disability, upon which the subsistence payments in this case were predicated, is not final, we affirm.

## BACKGROUND

¶2 On October 15, 1994, in the course of her employment at Sizzler Restaurant, Nellie Thomas slipped in a puddle of greasy water and fell, breaking her left arm and injuring her shoulder. Over the next three years, Thomas underwent four separate surgeries but never fully recovered the use of her arm. On May 15, 1997, Thomas filed an application for a hearing with the Commission, claiming entitlement to permanent total disability benefits under the Utah Workers' Compensation Act. See Utah Code Ann. §§ 34A–2–101 to –803 (2001). An administrative law judge heard her case on January 6, 1998. On January 8, 1998, the administrative law judge determined that Thomas was temporarily totally disabled and ordered that the issue of permanent total disability be held in reserve until her medical condition stabilized.

¶3 In the following months, Thomas underwent an examination by a doctor, who

David W. Parker, Salt Lake City, Virginius Dabney, Aaron J. Prisbey, St. George, for petitioner Alan Hennebold, Salt Lake City, for petitioner Labor Commission.

Carrie T. Taylor, Mark R. Sumsion, Salt Lake City, for respondent.

DURRANT, Associate Chief Justice:

¶1 In this case, we consider whether an order from an administrative law judge to an employer to initiate subsistence payments for an injured employee is enforceable before the administrative decision-making process has reached its end. Nellie Thomas, an employee of Color Country Management ("Color Country"), was injured in the course of her employment, and an administrative law judge for the Utah Labor Commission ("Commis-

found that she had reached medical stability and would not recover any further use of her arm. Color Country then requested that the administrative law judge reconsider the issue of permanent total disability, and on August 11, 1998, the judge determined that, based on her recent medical evaluations, Thomas qualified for increased disability compensation. The judge tentatively found that she was permanently totally disabled and ordered that Color Country initiate permanent total disability subsistence payments to provide for Thomas during the interim period pending a final finding of permanent total disability. Under the Workers' Compensation Act, a final finding could not be made until Color Country had the opportunity to submit a reemployment plan for the judge's evaluation.

¶ 4 Color Country prepared and submitted a reemployment plan but refused to make the ordered subsistence payments. On May 1, 2000, Thomas requested that the administrative law judge issue an abstract of her award that she could file with the district court in order to effect enforcement of the subsistence payments. A week later, Color Country filed an objection to the proposed request with the administrative law judge, arguing that, according to the statute, abstracts could only be issued for final orders, and that the order to initiate subsistence payments was not a final order.

¶ 5 On May 18, 2000, the administrative law judge held that the order based on the initial finding of permanent total disability "constituted a final order with respect to that particular issue." Thereafter, the administrative law judge reviewed the reemployment activities that had followed the initial finding of permanent total disability and issued a comprehensive final order for the case on June 14, 2000. He held that Thomas was permanently totally disabled and ordered that Color Country pay her permanent total disability compensation covering the period from August 16, 1996, to August 16, 2002, at which point the compensation would continue at a modified rate.[1] He also ordered Color

Country to pay all medical expenses related to Thomas's accident.

¶ 6 The following month, Color Country filed two motions requesting that the Commission's Appeals Board review the administrative law judge's ruling regarding issuance of the abstract of Thomas's award and his comprehensive decision of June 14, 2000. The Appeals Board issued its ruling on October 31, 2000, essentially affirming the comprehensive findings of the administrative law judge without addressing the propriety of the issuance of the abstract of award. Color Country then filed a petition for review with the Utah Court of Appeals challenging both the final finding and the issuance of the abstract of Thomas's award. Additionally, it again requested that the Appeals Board issue a decision regarding the issuance of the abstract. On January 11, 2001, the Appeals Board notified Color Country that its appeal to the court of appeals "subsume[d] the issue" and refused to issue a decision on the matter. On December 6, 2001, the court of appeals affirmed the decision of the Appeals Board regarding the legality and propriety of the comprehensive, and final, findings of the administrative law judge. *Color Country Mgmt. v. Labor Comm'n,* 2001 UT App. 370, ¶ 47, 38 P.3d 969. However, the court of appeals also briefly addressed whether the administrative law judge appropriately issued an abstract of Thomas's award and concluded that "the order was not a final order, and hence, the abstract was improperly issued." *Id.* at ¶¶ 44–47.

¶ 7 After the court of appeals issued its ruling, Thomas petitioned this court for a writ of certiorari, which we granted. Thomas's petition challenges only the final portion of the court of appeals' decision, concerning the propriety of issuing an abstract of the initial award of permanent total disability compensation. We have jurisdiction to review the court of appeals' decision pursuant to Utah Code section 78–2–2(3)(a). Utah Code Ann. § 78–2–2(3)(a) (2002).

---

1. Beginning August 16, 2002, Color Country's compensation payments would continue at either the permanent total disability weekly compensation rate or "36% of the state average weekly wage, whichever [was] greater, reduced by 50% of any Social Security retirement benefits" that Thomas was receiving.

## ANALYSIS

¶ 8 In her petition, Thomas argues that the administrative law judge appropriately issued an abstract of her award for interim or tentative permanent total disability payments because the award was a final order as to the payments required to be made during the interim period between the initial and final finding. Color Country argues that we should uphold the court of appeals' determination that this interim award was not final and that the administrative law judge improperly issued an abstract of Thomas's award. Color Country further argues, however, that because the court of appeals' ruling has rendered "[section] 34A–2–413 unworkable," we should, for the benefit of future cases, hold that, as a general matter, tentative awards of permanent total disability ordered pursuant to section 34A–2–413 are nevertheless final both for purposes of appeal and enforcement, i.e., issuance of an abstract, "once all appeals have been exhausted." In order to address these concerns, we will examine the language of several statutes that govern these issues.

## I. STANDARD OF REVIEW

¶ 9 On certiorari, we review the decision of the court of appeals for correctness, giving the court of appeals' conclusions of law no deference. *Grand County v. Rogers*, 2002 UT 25, ¶ 6, 44 P.3d 734. "When interpreting statutes, we determine the statute's meaning by first looking to the statute's plain language, and give effect to the plain language unless the language is ambiguous." *State v. Schofield*, 2002 UT 132, ¶ 8, 63 P.3d 667 (quotation omitted). Moreover, "[t]he plain language of a statute is to be read as a whole, and its provisions interpreted in harmony with other provisions in the same statute and with other statutes under the same and related chapters." *Id.* (quotation omitted). Further, " 'when two statutory provisions conflict in their operation, the provision more specific in application governs over the more general provision.' " *Taghipour v. Jerez*, 2002 UT 74, ¶ 11, 52 P.3d 1252 (quoting *Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 15, 24 P.3d 958).

## II. SECTION 34A–2–212: ABSTRACT OF FINAL ORDERS

¶ 10 "Ordinarily, an award of benefits is paid by a workers' compensation carrier without resort to judicial machinery." *Stokes v. Flanders*, 970 P.2d 1260, 1262 (Utah 1998). However, the legislature has provided a mechanism to aid injured employees when employers refuse to comply with an administrative law judge's award of disability compensation by allowing an order for such compensation to "be enforced in the same manner as any judicial judgment." *Id.* Section 34A–2–212 of the Utah Labor Code states that "[a]n abstract of any final order providing an award may be filed . . . in the office of the clerk of the district court," and that such an abstract shall "constitute a lien" upon the employer's real property. Utah Code Ann. § 34A–2–212(1)(a), (c) (2001). In other words, an injured employee may use the district court to enforce the payment of an award issued by the Commission by filing an abstract of "any final order providing an award" with the district court.[2]

2. It appears that the question of whether the abstract of Thomas's award was properly issued is moot. Because the administrative law judge made a second, and final determination, on June 14, 2000, that Thomas was permanently totally disabled and ordered Color Country to pay permanent total disability compensation commencing from the time of her injury, an abstract of that final order could properly issue. Accordingly, any argument made by Thomas that her abstract award should be evaluated using section 35–1–59, the section governing abstracts of awards that existed at the time of her injury, as opposed to the later amended section 34A–2–212, is also moot. *Compare* Utah Code Ann. § 35–1–59 (1979) ("[a]n abstract of *any award* may be filed in the office of the clerk of the district court" (emphasis added)), *with* Utah Code Ann. § 34A–2–212(1)(a) (2001) ("[a]n abstract of *any final order* providing an award may be filed . . . in the office of the clerk of the district court" (emphasis added)).

Notwithstanding the apparent mootness of the issue, however, we have discretion to address whether the first abstract in this case was properly issued under Utah Code section 34A–2–212(1)(a) because it presents an issue that affects the public interest, is likely to recur, and is capable of evading review during the brief time any one litigant is affected. *Ellis v. Swensen*, 2000 UT 101, ¶ 26, 16 P.3d 1233. "[T]he ultimate determination of whether to address an issue that is technically moot rests in the discre-

¶ 11 This case turns on the interpretation of this language. Clearly, the administrative law judge's order provided Thomas with an award of permanent total disability compensation; at issue is whether that award was final. Since only abstracts of "final orders providing an award" may be filed in district court, the administrative law judge's issuance of an abstract of Thomas's award was proper only if the order based on the tentative finding constituted a "final order."

¶ 12 In their arguments regarding the meaning of "final order" in section 34A–2–212, both parties rely on the three-prong test set forth in *Union Pacific Railroad Co. v. Utah State Tax Commission*, 2000 UT 40, ¶ 16, 999 P.2d 17.[3] The *Union Pacific* test asks three questions to determine whether agency action is final for purposes of judicial review:

(1) Has administrative decision-making reached a stage where judicial review will not disrupt the orderly process of adjudication?;

(2) Have rights or obligations been determined or will legal consequences flow from the agency action?; and

(3) Is the agency action, in whole or in part, not preliminary, preparatory, procedural, or intermediate with regard to subsequent agency action?

*Id.* These considerations aid us in determining whether "[a]gency actions that meet the foregoing test are appealable." *Id.*

¶ 13 However, the parties' reliance on *Union Pacific* is misplaced. We formulated the *Union Pacific* test to determine what constitutes a "final agency action" for purposes of judicial review as provided by the Utah Administrative Procedures Act. *See* Utah Code Ann. § 63–46b–14(3)(a) (1997); *Union Pacif-*

ic, 2000 UT 40 at ¶ 11, 999 P.2d 17. That act establishes that "the Supreme Court or the Court of Appeals has jurisdiction to review all final agency action resulting from formal adjudicative proceedings." Utah Code Ann. § 63–46b–16(1) (1997).[4] Thus, the *Union Pacific* test is a jurisdictional inquiry.

¶ 14 Although the Utah Administrative Procedures Act grants jurisdiction to the appellate courts over "final agency actions," it "does not specifically define" this term. *Barker v. Utah Pub. Serv. Comm'n*, 970 P.2d 702, 705 (Utah 1998). Since this act does not provide a definition, we developed the *Union Pacific* test to determine when administrative orders constitute "final agency actions" in order to invoke appellate jurisdiction. *Union Pacific*, 2000 UT 40 at ¶ 16, 999 P.2d 17. Unlike the term "final agency action," the term "final order" is defined in the Workers' Compensation Act. Because this act clearly defines "final order," we need not turn to *Union Pacific* for guidance on what constitutes a "final order" for which an abstract may issue. Thus, what constitutes a final order for purposes of appellate review is different than what constitutes a final order for purposes of the issuance of an abstract of an administrative award.

¶ 15 Although the *Union Pacific* test does not apply to determining what constitutes a "final order" for which an abstract may issue under the Workers' Compensation Act, *Union Pacific* continues to be the standard by which "final administrative action" will be judged for the purpose of judicial review. To determine whether Thomas's award was final within the context of the Workers' Compensation Act for purposes of enforcing an abstract of award, however, we look to the plain language of the statute.

tion of this court." *Id.* Considering the serious nature of the ambiguity in the statute and the potential for recurring problems between injured employees and employers, we assume for purposes of analysis that section 34A–2–212(1)(a) applies retroactively and address the issue accordingly.

3. We note that Color Country also argues that the tentative order the administrative law judge issued to initiate permanent total disability payments lacked the mandatory language that provides notice of the parties' rights to administra-

tive or judicial review as required by section 63–46b–10(1) of the Utah Code. Utah Code Ann. § 63–46b–10(1)(f) (Supp.2003); *see also id.* § 63–46b–12(6)(c)(vii) (Supp.2003). In light of our analysis in today's decision, we feel it unnecessary to reach this argument.

4. According to section 78–2a–3(2)(a), the court of appeals has original appellate jurisdiction over the proceedings of the Commission in this case. *See* Utah Code Ann. § 78–2a–3(2)(a) (2002).

¶ 16 Our analysis today turns on the "final order" language of section 34A-2-212, but that language "should not be isolated from the rest of the [Utah Labor Code]," *Provo City Corp. v. State*, 795 P.2d 1120, 1123 (Utah 1990), especially because sections 34A-1-303 and 34A-2-801 define what constitutes a final order of the Commission while section 34A-2-413 places a limiting construction on the definition. Thus, in addressing the issue, we look to each of these sections and seek to harmonize them with each other.

### III. SECTIONS 34A-1-303 AND 34A-2-801 [5]

¶ 17 Sections 34A-1-303 and 34A-2-801 set forth a broad definition of the term "final order." Specifically, section 34A-1-303 of the Utah Labor Code states that *"[a] decision entered by an administrative law judge* under this title is the *final order* of the commission unless a further appeal is initiated." Utah Code Ann. § 34A-1-303(1) (emphasis added). It also states that *"[a] decision of the commissioner is a final order* of the commission," and *"[a] decision of the Appeals Board is a final order* of the commission," unless the decisions are "set aside by the court of appeals." *Id.* § 34A-1-303(2)(b)(ii), (2)(c)(ii) (emphasis added). In other words, the Utah Labor Code provides that any decision made by an entity that holds the authority of the Commission, which is not further appealed through administrative procedures, is a "final order" of the Commission.

¶ 18 Section 34A-2-801 reaffirms this statutory definition of a "final order", stating that "[u]nless a party in interest appeals the decision of an administrative law judge ..., the *decision of an administrative law judge* ... is a *final order* of the commission 30 days after the date the decision is issued." *Id.* § 34A-2-801(2) (emphasis added). If a party in interest does not pursue further administrative review through the procedure outlined in this section, the decision of the administrative law judge becomes final. *Id.* § 34A-2-801(2), (3).

¶ 19 While the definition of what constitutes a final order in these two sections is very broad, there is also an express limitation on what constitutes a final order included in section 34A-2-413 of the Workers' Compensation Act. Section 34A-2-413(6)(a) specifically states that initial findings of permanent total disability are not final. Thomas's award is based on this more specific section. Because "our rules of statutory construction provide that 'when two statutory provisions conflict in their operation, the provision more specific in application governs over the more general provision,'" *Taghipour v. Jerez*, 2002 UT 74, ¶ 11, 52 P.3d 1252 (quoting *Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 15, 24 P.3d 958), we must now determine how the more specific provision affects our analysis. Therefore, we examine section 34A-2-413, which provides for permanent total disability awards.

### IV. SECTION 34A-2-413: PERMANENT TOTAL DISABILITY

#### A. Procedure Outlined in Section 34A-2-413

¶ 20 Injured employees seeking permanent total disability compensation for work-related injuries must show by a preponderance of the evidence that they have become permanently totally disabled as a result of an industrial accident or occupational disease. Utah Code Ann. § 34A-2-413(1)(b) (2001). An administrative law judge must review the evidence to determine, essentially, whether the employee is permanently disabled and unable to perform reasonably available work. *Id.* § 34A-2-413(1)(c).

¶ 21 Section 34A-2-413(6) outlines the process an administrative law judge must follow when determining whether an injured employee is entitled to permanent total disability compensation. This section requires that a finding be issued in two parts—an initial finding and a final finding. The initial finding of permanent total disability triggers a review period in which the employer or its

**5.** We note that the legislature amended sections 34A-1-303 and 34A-2-801 effective May 2003. *See* Utah Code Ann. §§ 34A-1-303, 34A-2-801 (Supp.2003). The changes to these sections were stylistic rather than substantive, however, and our analysis would be the same under either version. We cite therefore the sections currently in effect.

insurance carrier may submit a reemployment plan. *Id.* § 34A–2–413(6)(a)(ii), (d). This subsection specifically states that the initial "finding by the commission of permanent total disability *is not final*, unless otherwise agreed to by the parties, until" the employer has the opportunity to submit a reemployment plan, the administrative law judge reviews this reemployment plan and the reemployment activities undertaken pursuant to statute, and the administrative law judge holds a hearing. *Id.* § 34A–2–413(6)(a). The intent of the reemployment plan is to determine whether the injured employee can be rehabilitated in order to reenter the workforce, and a final finding of permanent total disability is held in reserve until the possibilities of reemployment are either exhausted or abandoned. Only after all of these requirements have been met does the finding of permanent total disability become final.

¶ 22 Even though the initial finding is expressly made not final by statute, section 34A–2–413(6)(b) requires that the administrative law judge order the employer to make subsistence payments during the review period between the initial and final findings of permanent total disability. Following the initial finding, and "[p]rior to the finding becoming final, the administrative law judge *shall* order . . . the initiation of permanent total disability payments to provide for the employee's subsistence." *Id.* § 34A–2–413(6)(b)(i) (emphasis added). Thus, through the section 34A–2–413(6)(b)(i) payments, section 34A–2–413 purports to provide injured employees with compensation until a final finding can be made regarding their disability status.

¶ 23 If the employer refuses to comply with a subsistence payment order from the administrative law judge, the employee's only apparent means of enforcement is to request that the administrative law judge issue an abstract of this interim award that can then be filed with the district court. However, to obtain the abstract from the administrative law judge, the subsistence payment order

must be a final order. Therefore, even though initial findings are not final orders, we must determine whether the section 34A–2–413(6)(b)(i) order to initiate subsistence payments, which is predicated on this nonfinal finding, qualifies, for the purpose of issuing an abstract under section 34A–2–212, as a "final order" under the definition set forth above.

### B. A Section 34A–2–413(6)(b)(i) Order Is Not a "Final Order"

 ¶ 24 A section 34A–2–413(6)(b)(i) order to initiate subsistence payments is predicated on the administrative law judge's initial finding that, based on the evidence submitted, the employee is sufficiently injured to merit the receipt of permanent total disability compensation. Although this initial finding seems to fit the broad definition of a final order set forth in sections 34A–1–303 and 34A–2–801 because it is a decision entered by an administrative law judge regarding an employee's disability status, initial findings have been expressly excluded from the definition by the plain language of section 34A–2–413(6)(a). Thus, section 34A–2–413(6)(a) provides a specific exception to the broad definition of final order found in sections 34A–1–303 and 34A–2–801. Moreover, because this section has specific application to the subsistence payment order at issue in this case, its provisions supersede the general provisions of sections 34A–1–303 and 34A–2–801 with respect to that order.

 ¶ 25 Because initial findings are not final orders, subsistence payment orders predicated upon initial findings also are not final orders. Before becoming final, the initial finding may be modified as a result of the employee's rehabilitation or reemployment.[6] The statute specifically prohibits the administrative law judge from entering a final order until these conditions are met. Because initial findings may be modified, subsistence payments predicated upon initial findings may also be modified. Hence, even though section 34A–2–413(6)(b)(i) directs administrative law judges to order the initiation of

---

6. "When an employee has been rehabilitated or the employee's rehabilitation is possible but the employee has some loss of bodily function, the

award shall be for permanent *partial* disability." Utah Code Ann. § 34A–2–413(8) (emphasis added).

subsistence payments, such orders are expressly not "final orders." Therefore, under the present statutory scheme, an administrative law judge may not issue an abstract of a subsistence payment order that is based on this initial, non-final finding.

¶ 26 Our conclusion does not alter the directive in section 34A–2–413(6)(b) that requires administrative law judges to order subsistence payments to be made to injured employees until the Commission reaches a final finding. However, the present structure of the statute does prevent enforcement by abstract because it classifies the initial finding of permanent total disability as not final. We recognize the difficulty this may create for injured employees and urge the legislature to rectify the problem, but we cannot ignore the plain language of section 34A–2–413(6)(a); "[t]o do otherwise trespasses upon the legislative domain." *Gottling v. P.R., Inc.*, 2002 UT 95, ¶ 23, 61 P.3d 989.

## CONCLUSION

¶ 27 Section 34A–2–212 of the Utah Labor Code provides that an abstract of any final order providing an award may be filed with a district court for the purpose of enforcement. While sections 34A–1–303 and 34A–2–801 of the Labor Code set forth a broad definition of what constitutes a final order, the language of section 34A–2–413 excepts the initial finding of permanent total disability from this broad definition of "final order" by expressly stating that the initial, tentative finding is not final. The present statutory structure of section 34A–2–413, which governs awards of permanent total disability compensation, divides the administrative law judge's decision-making process into two parts—an initial finding and a final finding. Because the section 34A–2–413(6)(b)(i) order to initiate permanent total disability subsistence payments is based on the initial finding—a finding that the statute expressly states is not yet final—it is not a "final order" from which an abstract may be issued. Thus, Thomas's abstract of award was improperly

issued, and we affirm the decision of the court of appeals.

¶ 28 Justice WILKINS and Justice PARRISH concur in Associate Chief Justice DURRANT's opinion.

DURHAM, Chief Justice, concurring:

¶ 29 I write separately to discuss an issue alluded to in footnote two of the majority opinion. In that footnote, we state that "any argument made by Thomas that her abstract of award should be evaluated using section 35–1–59, the section governing abstracts of awards that existed at the time of her injury, as opposed to the later amended section 34A–2–212, is ... moot." Thomas did, in fact, advance such an argument, and but for its mootness, I would find it determinative in this case. It raises the important question of how we analyze whether to apply statutory amendments—and specifically in this case, worker's compensation statutory amendments—retroactively. For the benefit of future cases,[1] I wish to take this opportunity to clarify just how we should analyze the issue of whether to apply statutory changes retroactively.

¶ 30 We recognize an exception to the general prohibition on retroactive application of statutes. A statutory amendment that does not " 'enlarge, eliminate, or destroy' " substantive rights is not substantive, and can therefore be applied retroactively. *Moore v. Am. Coal Co.*, 737 P.2d 989, 990 (Utah 1987) (quoting *State Dep't of Soc. Servs. v. Higgs*, 656 P.2d 998, 1000 (Utah 1982)). This should not be the end of our analysis, however. We must remember our strong presumption against retroactivity, and also consider several factors when deciding whether to allow retroactive application.

¶ 31 First, the Utah Code provides that "[n]o part of these revised statutes is retroactive, unless expressly so declared." Utah Code Ann. § 68–3–3 (2000). Consequently, Utah courts follow the general rule that "a

---

1. Although the statutory amendment adding the "final order" requirement became effective on July 1, 1997 and the statute of limitations for workers' compensation cases is generally six years, *see* Utah Code Ann. § 34A–2–417(2) (2001), the Commission has continuing jurisdiction to reexamine claims that were initially brought within the six year statute of limitations. *Id.* § 34A–2–420; *Ortega v. Meadow Valley Constr.*, 2000 UT 24, ¶¶ 9–11, 996 P.2d 1039.

statute generally cannot be given retroactive effect unless the legislature expressly declares such an intent in the statute." *Washington Nat'l Ins. Co. v. Sherwood Assocs.*, 795 P.2d 665, 667 (Utah Ct.App.1990) (citing Utah Code Ann. § 68-3-3 (1986)); *see also Madsen v. Borthick*, 769 P.2d 245, 253 (Utah 1988); *Stephens v. Henderson*, 741 P.2d 952, 953 (Utah 1987); *In re J.P.*, 648 P.2d 1364, 1369 (Utah 1982). Section 34A-2-212 of the Utah Code does not expressly provide for its retroactive application; if the issue were not moot, therefore, our default position would have to be that section 34A-2-212 was retroactively inapplicable unless it was clear that some exception could be invoked.

¶ 32 Superimposed on this foundational rule against retroactive application is a second general rule for workers' compensation cases in particular: The parties' rights in such cases are controlled by the law as it stood on the day of the accident. *Moore*, 737 P.2d at 990. This second general rule further strengthens the default position.

¶ 33 One exception to the general rule against retroactive application of laws in workers' compensation cases is the "procedural" exception. According to this exception, amendments that merely alter the procedure by which substantive rights are adjudicated are retroactively applicable. The rule is simple enough to articulate, but it is much more difficult to determine whether a statutory change is procedural rather than substantive. We have differentiated "procedural" from "substantive" statutes in varying ways. As we said in *Moore*, an amendment is not substantive if it does not " 'enlarge, eliminate, or destroy' " substantive rights. 737 P.2d at 990 (quoting *Higgs*, 656 P.2d at 1000). "[A] statute is procedural when it provides a remedy for already existing rights or merely adds to or provides a substitute for already existing remedies." *Docutel Olivetti Corp. v. Dick Brady Sys.*, 731 P.2d 475, 478 (Utah 1986) (citing *Boucofski v. Jacobsen*, 36 Utah 165, 104 P. 117, 119 (1909)).

¶ 34 Significantly, "convenience and reasonableness are properly considered in determining whether legislation is remedial or procedural." *Moore*, 737 P.2d at 990 (citing *Boucofski*, 104 P. at 119-20).) "Considerations of 'convenience, reasonableness and justice' should be taken into account in making determinations of legislative intent." *Docutel Olivetti*, 731 P.2d at 478 (quoting *Boucofski*, 104 P. at 119)).

¶ 35 While we have not, in the past, expressly aligned Utah law with federal court pronouncements on retroactive application of statutory amendments, the federal rule is entirely sound. "Retroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). When analyzing whether applying a statute as amended "would have retroactive effects inconsistent with the usual rule that legislation is deemed to be prospective," we should use "a common sense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment.' This judgment should be informed and guided by 'familiar considerations of fair notice, reasonable reliance, and settled expectations.' " *Martin v. Hadix*, 527 U.S. 343, 357-58, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). This approach is both complementary and analogous to our own mandate to consider "convenience, reasonableness, and justice." *Docutel Olivetti*, 731 P.2d at 478 (internal quotation omitted).

¶ 36 As we use all these factors to analyze whether a given amendment enlarges, eliminates, or destroys substantive rights, however, we must keep in mind that the procedural exception to the general rule against retroactivity is "narrow." *J.P.*, 648 P.2d at 1369 n. 4 (Utah 1982). Furthermore, "[w]hen the Legislature amends a statute, we presume it intended to make a substantive, rather than a procedural or remedial change." *Wilde v. Wilde*, 2001 UT App 318, ¶ 13, 35 P.3d 341 (citing *Wilde v. Wilde*, 969 P.2d 438, 442 (Utah Ct.App.1998)). Finally, this court should adhere to the deeply-rooted principle that "a court will and ought to struggle hard against a construction which will, by retrospective operation, affect the rights of parties." *United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49

(1801).[2] We should fall back on our general rule against retroactive application when the presumption of substantiveness is not clearly rebutted. In other words, when in doubt, we should find that the statute is substantive.

¶ 37 The statutory provision at issue in *Martin v. Hadix* involved the amount of attorney fees that courts can award to attorneys who successfully litigate prisoner lawsuits. 527 U.S. at 347, 119 S.Ct. 1998. The statute, the Prison Litigation Reform Act of 1995 ("PLRA"), capped certain kinds of attorney fees, and the United States Supreme Court had to decide whether the cap was applicable only to attorney work performed after the PLRA's effective date, or whether it could also be applied retroactively, to work that attorneys had performed before the effective date. *Id.*

¶ 38 The petitioners in *Martin* argued that the PLRA's attorney fee provision should be retroactively applicable, "because fees questions are incidental to, and independent from, the underlying substantive cause of action. They do not, in other words, change the substantive obligations of the parties because they are collateral to the main cause of action." *Id.* at 359, 119 S.Ct. 1998 (internal quotations omitted). The *Martin* Court did not disagree with the argument that the law did not change the parties' substantive rights or obligations. *See id.* Consequently, if all it took to permit a new law's retroactive application was the ability to characterize it as merely procedural, then the *Martin* petitioners should have had an airtight argument. They did not. Instead, the *Martin* Court emphasized that a more searching, nuanced analysis is necessary.

> Attaching the label "collateral" to attorney's fee questions does not advance the retroactivity inquiry, however. While it may be possible to generalize about types of rules that ordinarily will not raise retroactivity concerns, these generalizations do not end the inquiry. For example, in

*Landgraf* we acknowledged that procedural rules may often be applied to pending suits with no retroactivity problems, but we also cautioned that *the mere fact that a new rule is procedural does not mean that it applies to every pending case.* We took pains to dispel the suggestion that concerns about retroactivity have no application to procedural rules. When determining whether a new statute operates retroactively, it is not enough to attach a label (e.g., "procedural," "collateral") to the statute; we must ask whether the statute operates retroactively.

*Id.* (internal quotations and citations omitted) (emphasis added). Therefore, the *Martin* Court looked beyond the PLRA's superficial procedural character. Applying "a common sense, functional judgment" that was "guided by familiar considerations of fair notice, reasonable reliance, and settled expectations," *id.* at 357–58, 119 S.Ct. 1998 (internal quotation omitted), it found that the PLRA's attorney fees cap could not be applied retroactively. *Id.* at 358–60, 119 S.Ct. 1998.

¶ 39 If the retroactivity issue were not moot, this case would, like *Martin,* demand that we use our "common sense, functional judgment" to decide whether to impose the final order requirement of Utah Code section 34A–2–212 on claims that arose before the requirement was enacted. Prior to the amendment, injured workers had a reasonable expectation of receiving subsistence payments, *see* Utah Code Ann. § 34A–2–413(6)(b)(i)(2000), and undisputed disability and medical benefits, *see id.* § 34A–2–413(6)(b)(ii), once they could make an initial showing that they were permanently totally disabled. They could reasonably rely on ALJs to order these payments because the Administrative Law Judges (ALJs) operate under a definitive statutory mandate to order them. An ALJ must order the payments, in every case, once he or she has made an initial finding of permanent total disability. *See id.*

---

**2.** I note that the law at issue in *Schooner Peggy* was different from the "final order" statutory amendment in this case, because the *Schooner Peggy* law—a treaty—expressly stated that it was to be applied retroactively. *See* 5 U.S. (1 Cranch) at 108 (basing holding on fact that new treaty expressly applied to property that was not "defin-

itively condemned" at the time the treaty was signed). This distinction does not diminish the importance of the principle that we should "struggle hard" against construing statutory amendments as retroactively applicable when those amendments affect litigants' substantive rights.

§ 34A–2–413(6)(b) (providing that the ALJ "shall order" such payments "[p]rior to the finding becoming final"). Similarly, employers had the expectation that they would have to make those payments to injured workers. Employers and employees alike knew where they stood in the event that an employee made an initial showing of permanent total disability.

¶ 40 The new final order requirement, however, directly conflicts with this legislative mandate. "The statutes of this state require the courts to give legislative enactments a liberal construction, with a view to effectuate the purpose sought by the Legislature." *Utah Copper Co. v. Indus. Comm'n of Utah*, 57 Utah 118, 193 P. 24, 29 (1920). If the final order requirement of section 34A–2–212(1)(a) is retroactive, it means that a permanently, totally disabled worker cannot enforce the ALJ's order, because the worker cannot get an abstract of the ALJ's order to issue. It is unreasonable to assume that the legislature intended to create a statutory conflict that would deprive permanently totally disabled workers of important rights. The amendment's retroactive applicability means that the employer serendipitously benefits from what is apparently an unintended loophole, while the injured worker suffers serious hardship. Such a conclusion should offend our "common sense, functional judgment." *See Martin*, 527 U.S. at 357–58, 119 S.Ct. 1998. If the retroactivity issue were not moot, therefore, I would hold that the final order requirement could not be applied retroactively.

¶ 41 Examining this case in light of the "convenience, reasonableness and justice" factors that we articulated in *Moore, Docutel Olivetti*, and *Boucofski* reinforces my conclusion. The majority acknowledges that its interpretation of the amendment creates a "problem" with section 34A–2–413(6)(b) that the legislature should "rectify." Asking the

legislature to fix the problem may be convenient for us, but it certainly does not satisfy the "convenience" factor for Ms. Thomas. Because of this statutory conflict, ALJs "shall order" employers to pay subsistence payments to injured workers, but the employers can flout those orders with impunity, because the ALJ's initial finding of permanent total disability is not a "final order." That can hardly be called "reasonable." Ms. Thomas had an enforceable right to subsistence payments prior to the amendment, but applying the amendment retroactively emasculates that right without any indication that the legislature truly intended such a result. That is not "just." At the very least, a careful analysis using all of these factors would raise enough doubt that use of the narrow procedural exception to escape the strong presumption against retroactivity would be misguided.

¶ 42 We have previously held that it would be improper to apply statutory amendments retroactively, even when those amendments seemingly implicated mere procedure. We have found, for example, that an amendment that alters the notice requirements of the Governmental Immunity Act is substantive. The plaintiff in *Schultz v. Conger*, 755 P.2d 165 (Utah 1988), sued a county employee for personal injuries that the county employee allegedly caused the plaintiff in a traffic accident. The defendant employee had been acting in the course of his employment at the time of the accident, but was engaged in a nongovernmental function. *Id.* at 166. At the time the plaintiff filed suit, Utah Code section 63–30–13 (1986) required the plaintiff to file a notice of claim with the county only if her claim arose from the performance of a true governmental function. *Id.* After the plaintiff had filed suit, the legislature amended section 63–30–13 to require the filing of a notice of claim whether the function from which the claim arose was governmental or nongovernmental.[3] We held that the amend-

---

3. Prior to the amendment, section 63–30–13 read:

> A claim against a political subdivision or against its employee for an act or omission occurring during the performance of his duties, within the scope of employment, or under color of authority, is barred unless notice of claim is filed with the governing body of

the political subdivision within one year after the claim arises, or before the expiration of any extension of time granted under Subsection 63–30–11(4).

The only significant change that the amendment made was to add this phrase onto the end of the section: "regardless of whether or not the func-

ment did not apply to the case, and that therefore the plaintiff only needed to follow the notice requirement that was in place when her claim arose. *Id.*

¶ 43 The amendment at issue in *Schultz* was similar to the one at issue in this case because it did not, on its face, appear to "enlarge, eliminate, or destroy" the plaintiff's substantive right to sue a government employee. It did not, for example, create or abolish any causes of action that a plaintiff might have against government employees acting within the scope of their employment. It did not raise or lower any of the evidentiary burdens that a plaintiff must bear to state a claim against a government employee. It simply imposed a requirement that a plaintiff file a notice of claim "with the governing body of the political subdivision within one year after the claim arises." Utah Code Ann. § 63–30–13 (1997). While we did not explain the factors that moved us to find that the procedural exception did not apply, *Schultz* does demonstrate that in the past we have had no difficulty barring retroactive operation of changes in procedural law.

¶ 44 Utah courts have also been quite willing to reject interpretations of the Workers' Compensation Act that would allow employers to avoid their payment obligations "in direct contravention to the larger purpose and spirit of the Workers' Compensation Act." *Color Country Mgmt. v. Labor Comm'n,* 2001 UT App 370, ¶ 21, 38 P.3d 969 (citing *Wilstead v. Indus. Comm'n,* 17 Utah 2d 214, 407 P.2d 692, 693 (1965) (listing purposes of the Act as insuring income to injured employees; eliminating the expense, delay, and uncertainty of employees having to prove negligence; and making industry bear the burdens of worker injuries)). For example, in *Industrial Commission v. Daly Mining Co.,* 51 Utah 602, 172 P. 301 (1918), we rejected an employer's proposed interpretation of the Workers' Compensation Act because it would have made the Act "useless and of no material benefit." *Id.* at 306. In this case, there can be no doubt that interpreting the final order requirement to be within the narrow procedural exception

would indeed render section 34A–2–413(6)(b) "useless and of no material benefit."

¶ 45 In other contexts as well, Utah appellate courts have refused to impose upon innocent litigants a statutory interpretation granting them a right, but at the same time render that right "meaningless or illusory." For example, the Utah legislature has given parents the statutory right to representation by counsel at every stage of a custody termination proceeding, including the court-appointment of counsel for indigent parents. Utah Code Ann. § 78–3a–913(1)(a) (1999). The statute, however, does not expressly mandate that the counsel be "effective." *See id.* The court of appeals reasoned that the statutory right must be construed in such a way as to ensure that the right granted is meaningful:

> Although this section does not expressly state that counsel must be effective, the statute would be meaningless or illusory if it guaranteed only ineffective assistance of counsel. The legislature's omission of "effective" should not be read to suggest an intent to provide only ineffective assistance of counsel.

*State ex rel. E.H.,* 880 P.2d 11, 13 (Utah Ct.App.1994). We recently agreed with this reasoning. *State ex rel. M.M.,* 2003 UT 54, ¶ 7. Just as the court of appeals in *State ex rel. E.H.* was unwilling to follow a statutory interpretation that would strip a right of substance and enforceability, so too I would decline to interpret section 34A–2–212 in a way that renders the right to subsistence payments "meaningless or illusory."

¶ 46 Our rejection of statutory interpretations that render statutory rights "worthless and of no material benefit" or "meaningless or illusory" is consistent with the rule that we consider factors such as convenience, reasonableness, and justice in determining the procedural or substantive character of statutes. It is also consistent with the United States Supreme Court's dictate that courts should use a "common sense, functional" approach to determine whether a law should be applied retroactively.

tion giving rise to the claim is characterized as

governmental." 1987 Utah Laws ch. 75, § 6.

¶ 47 The law contains strong general presumptions against retroactive application. While it is not always simple to determine whether a statutory amendment is procedural or substantive in nature, careful analysis of the amendment adding the "final order" requirement does show that it qualifies as a substantive change. If we were deciding whether the narrow procedural exception applies to Ms. Thomas, we would have to consider a host of factors, such as convenience, reasonableness, and justice. In future cases, furthermore, we should remember the United States Supreme Court's admonishment that even if a rule of law seems aimed at procedure only, its effects can be so significant that retroactive application is improper. *See Martin*, 527 U.S. at 357–60, 119 S.Ct. 1998.

¶ 48 I would concede that if, following a statutory amendment, the party holding a right can still enforce that right in some meaningful, albeit different way, then retroactivity is acceptable. That is not what we confront with the change from section 35–1–59 to section 34A–2–212. The statutory change in this case converts an enforceable right into an unenforceable one. Such an amendment is almost as substantive as an outright abolition of the right itself. If the issue of retroactive application were not moot, therefore, I would find that the final order requirement could not be applied to Ms. Thomas.

NEHRING, Justice, concurring:

¶ 49 I concur in the opinion of the Associate Chief Justice and write separately out of apprehension that the failure of the Chief Justice's concurrence to assemble a majority may betray her cause to clarify our jurisprudence concerning the retroactive application of statutes by carrying the inference that we take issue with her analysis. I do not. To the contrary, I endorse her proposed methodology for taking on issues of retroactive statutory application. Moreover, I agree that the identification of the elements of that methodology is an "important question." It is not, however, a question that demands an answer in this case. Therefore, while I would be inclined to join the Chief Justice under other circumstances, because the status of Ms. Thomas's abstract of award is moot, I decline to do so here.