2007 UT App 304

**STATE of Utah, Plaintiff, Appellant, and Cross-appellee,**

v.

**Darrell Dean ANDERSON, Defendant, Appellee, and Cross-appellant.**

No. 20060099–CA.

Court of Appeals of Utah.

Sept. 20, 2007.

Mark L. Shurtleff, atty. gen., and Kenneth A. Bronston, asst. atty. gen., Salt Lake City, for Appellant and Cross-appellee.

Merlin G. Calver and J. Keith Henderson, Ogden, for Appellee and Cross-appellant.

Before GREENWOOD, Associate P.J., DAVIS and McHUGH, JJ.

OPINION

GREENWOOD, Associate Presiding Judge: .

¶ 1 Defendant Darrell Dean Anderson was convicted by a jury of one count of simple assault and one count of violating a protective order, both class A misdemeanors. The State appeals, arguing that Defendant's convictions should have been enhanced to third

degree felonies. *See* Utah Code Ann. § 77–36–1.1 (2002). Defendant cross-appeals, arguing that even though the trial court did not enhance Defendant's convictions, it erred in concluding that Defendant's previous conviction for disorderly conduct was actually for domestic violence disorderly conduct. Defendant also asserts that subsection (2)(c) of the Cohabitant Abuse Act, *see id.* § 30–6–1(2)(c) (2002), as applied to him, is vague and overbroad. We affirm.

## BACKGROUND

¶ 2 In August 2002, Defendant was charged with "D[omestic] V[iolence] disorderly conduct"[1] after an altercation with his father-in-law. Defendant, acting pro se, entered a plea of no contest to disorderly conduct at a proceeding before Judge West. The plea was held in abeyance. The documents regarding Defendant's arraignment and his plea contain no reference to domestic violence; rather, they mention only disorderly conduct. For example, the minutes from Defendant's arraignment state that Defendant was charged with "Disorderly Conduct." Similarly, the minutes from Defendant's plea notice hearing state that Defendant entered a plea in abeyance for "Disorderly Conduct."

¶ 3 About one year later, Defendant had some altercations with his wife and was subsequently charged with simple assault and violating a protective order, the domestic violence offenses at issue in this appeal.[2] Judge Baldwin then revoked Defendant's plea in abeyance and entered a conviction for disorderly conduct. The minutes from the revocation hearing reflect the following: "Court enters the conviction of Disorderly Conduct, a class C misdemeanor,[3] and terminates

jurisdiction. As the court file is unclear as to whether the defendant entered a plea to a domestic violence charge, conviction shall enter as to Disorderly Conduct."

¶ 4 Based on Defendant's disorderly conduct conviction, the State enhanced Defendant's simple assault and violation of a protective order charges to third degree felonies. *See id.* §§ 77–36–1(2)(*o*) (2002), 77–36–1.1. Defendant filed a motion to quash the prior conviction, arguing that it was not for domestic violence, as required by the enhancement statute. *See id.* §§ 77–36–1(2)(*o*), 77–36–1.1. Judge Dutson, the trial judge in this matter, initially agreed with Defendant, but after reviewing the transcripts from the revocation hearing, reversed his previous ruling. Defendant filed a petition for interlocutory review, which this court denied.

¶ 5 The case proceeded to a jury trial, and on the morning of trial, Defendant filed a motion to reduce all of the enhanced charges to misdemeanors, again on the basis that Defendant did not have a prior domestic violence conviction. The trial court denied Defendant's motion, and Defendant stipulated to the prior conviction as one involving domestic violence on the condition that he could preserve his right to appeal the trial court's decision.

¶ 6 The jury convicted Defendant of one count of simple assault and one count of violating a protective order, both of which had been enhanced to third degree felonies.[4] After trial, Defendant filed a motion to reduce his convictions on the same grounds that he had previously advanced. The trial court ordered briefing on the issue and held an evidentiary hearing. Ruling from the

---

1. On the citation issued to Defendant, the officer handwrote the applicable violation as "D.V. Disorderly Conduct," a violation of Utah Code section 76–9–102. *See* Utah Code Ann. § 76–9–102 (2003). Section 76–9–102 is titled "Disorderly Conduct" and does not refer to domestic violence. *See id.* Whether a conviction involves domestic violence is governed by Utah Code sections 77–36–1 and 30–6–1. *See id.* §§ 77–36–1 (2002), 30–6–1(2)–(3) (2002).

2. Defendant was initially charged with several domestic violence offenses in two separate informations, one in August 2003, and one in September 2003. At Defendant's request, his two cases

were consolidated for trial, and the State filed the second of two amended informations in November 2005. Many of Defendant's original charges were dismissed and of those that went to trial, the two mentioned here are the only charges for which Defendant was convicted.

3. Despite this statement, the conviction was actually entered as a class A misdemeanor.

4. Defendant was acquitted on one count of simple assault, and the jury hung on three remaining counts of violating a protective order.

bench, the trial court determined that even though Defendant's previous conviction "clearly" involved domestic violence, it did not qualify as an enhancing offense under Utah Code section 77–36–1(2)(*o*). *See* Utah Code Ann. § 77–36–1(2)(*o*). Accordingly, the trial court reduced Defendant's convictions to class A misdemeanors.

¶ 7 The State appeals, asserting that Defendant's disorderly conduct conviction required the trial court to enhance Defendant's convictions to felonies. Defendant cross-appeals, arguing that although his convictions were not enhanced, the trial court erred in finding that Defendant's previous conviction was for domestic violence disorderly conduct. Defendant also asserts that Utah Code section 77–36–1(2)(c), *see id.* § 77–36–1(2)(c), as applied to him, is vague and overbroad.

## ISSUE AND STANDARD OF REVIEW

¶ 8 The State argues that Defendant's prior conviction for disorderly conduct qualifies as a domestic violence offense under Utah Code section 77–36–1(2)(*o*), thereby requiring the trial court to enhance Defendant's current convictions. *See id.* §§ 77–36–1(2)(*o*), 77–36–1.1. "The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusion." *Gutierrez v. Medley*, 972 P.2d 913, 914–15 (Utah 1998).[5]

## ANALYSIS

### I. Defendant's Prior Conviction for Disorderly Conduct

¶ 9 The State argues that the trial court erred in reducing Defendant's convictions to class A misdemeanors because Defendant's disorderly conduct conviction is a qualifying domestic violence offense under the applica-

ble enhancement statute. *See* Utah Code Ann. § 77–36–1.1. Section 77–36–1.1 dictates that a domestic violence charge may be enhanced to a felony if the defendant has been convicted of a domestic violence offense within five years of another "qualifying domestic violence offense." *Id.* Utah Code section 77–36–1(2) (subsection (2)) defines a qualifying domestic violence offense as

> any criminal offense involving violence or physical harm or threat of violence or physical harm, ... when committed by one cohabitant[6] against another. "Domestic violence" *also means* commission or attempt to commit, any of the following offenses by one cohabitant against another: (a) aggravated assault ...; (b) assault ...; (c) criminal homicide ...; (d) harassment ...; [and] *(o) disorderly conduct, as defined in Section 76–9–102, if a conviction of disorderly conduct is the result of a plea agreement in which the defendant was originally charged with any of the domestic violence offenses otherwise described in this Subsection (2).*

*Id.* § 77–36–1(2) (emphasis added).

¶ 10 The trial court determined that Defendant's disorderly conduct conviction did not qualify as a domestic violence offense because it did not result from "a plea agreement in which ... [D]efendant was originally charged with any of the domestic violence offenses otherwise described in ... subsection (2)." *Id.* The State asserts that this determination was error for two reasons. First, the State argues that to qualify as a domestic violence offense, Defendant's disorderly conduct conviction need not result from a plea agreement in which Defendant was originally charged with one of the offenses enumerated in subsection (2).[7] Second, and in the alternative, the State asserts that Defendant's disorderly conduct conviction falls within the statute's more expansive definition

---

5. Our resolution of this issue obviates the need to address the issues raised on cross-appeal.

6. "Cohabitant" is defined as "a person who is 16 years of age or older who: ... (c) is related by blood or marriage to the other party." Utah Code Ann. § 30–6–1(2) (2002); *see also id.* § 77–36–1(1) (" 'Cohabitant' has the same meaning as in Section 30–6–1.").

7. At Defendant's evidentiary hearing, the trial court asked the State how it should "get around the if" in subsection (2): "You're saying [the legislature] should put a period after disorderly conduct as defined in Section 76–9–102, period, then capital if?" The State responded, "Yeah. I mean obviously ... basically that's what I'm saying. Even if you've got all these commas, because I am not sure what all of these commas are supposed to mean."

of a domestic violence offense: "[A]ny criminal offense involving violence or physical harm or threat of violence or physical harm ..., when committed by one cohabitant against another." *Id.* The trial court rejected these same arguments, stating,

> [U]nder the [enhancement] statute as presently adopted, even though a Disorderly Conduct–Domestic Violence occur[red], the clear language of subsection (*o*) prevents this Court from considering it as an enhancing offense. This is because the legislature has quite illogically determined that disorderly conduct must be reduced down from a higher charged offense to qualify. It is certainly not consistent with what would seem to be the purpose of the enhancement statute, but that is how it is presently drafted.

■■■ ¶ 11 When interpreting a statute, we look first to its plain language to determine its meaning. *See Utah State Tax Comm'n v. Stevenson,* 2006 UT 84, ¶ 32, 150 P.3d 521. "Only when we find that a statute is ambiguous do we look to other interpretive tools." *Id.* (internal quotation marks omitted). While examining a statute's plain language, we do so under the presumption that the "legislature used each term advisedly." *State v. Maestas,* 2002 UT 123, ¶ 52, 63 P.3d 621 (internal quotation marks omitted).

> "It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute.... No clause[,] sentence or word shall be construed as superfluous, void or insignificant if the construction can be found which will give force to and preserve all the words of the statute."

*Id.* at ¶ 53 (quoting 2A Norman J. Singer, *Sutherland Statutory Construction* § 46:06 (4th ed.1984)). Moreover, "[o]ur task is to interpret the words used by the legislature, not to correct or revise them. When the words are clear, however incongruous they may appear in policy application, we will interpret them as written, leaving to the legislature the task of making corrections when warranted." *State v. Wallace,* 2006 UT 86, ¶ 9, 150 P.3d 540.

■■■ ¶ 12 Thus, we begin with the plain language of the statute. Subsection (2) first states that " 'domestic violence' means any criminal offense involving violence or physical harm or threat of violence or physical harm ... when committed by one cohabitant against another." Utah Code Ann. § 77–36–1(2). Subsection (2) further states that domestic violence "also means" one of several enumerated offenses including, inter alia, battery, assault, homicide, harassment, etc., when committed by one cohabitant against another. *Id.* Finally, subsection (2) states that disorderly conduct also qualifies as a domestic violence offense "*if* a conviction of disorderly conduct is the result of a plea agreement in which the defendant was originally charged with any of the domestic violence offenses otherwise described in this subsection (2)." *Id.* § 77–36–1(2)(*o*) (emphasis added). Relying on the plain language of subsection (*o*), we conclude, contrary to the State's assertion, that a conviction for disorderly conduct qualifies as a domestic violence offense only if the defendant was first charged with any of the more serious crimes listed in subsection (2), and then pleaded to the lesser offense of disorderly conduct. Any other reading would negate the presence of the word "if" in the statute, which this court is not permitted to do. *See Maestas,* 2002 UT 123 at ¶ 52, 63 P.3d 621.

■■■ ¶ 13 The State also argues, in the alternative, that Defendant's conviction should fall under the catch-all phrase, "any conviction involving violence between one cohabitant against another." Utah Code Ann. § 77–36–1(2). However, this argument is inconsistent with the rule of statutory construction dictating that the more specific provision in subsection (*o*) prevails over the more general. "[W]hen two statutory provisions conflict in their operation, the provision more specific in application governs over the more general provision." *Thomas v. Color Country Mgmt.,* 2004 UT 12, ¶ 9, 84 P.3d 1201. Adhering to this rule of statutory construction, it appears that the legislature expressly limited disorderly conduct convictions for purposes of enhancement to those that result from a guilty plea after the defendant was originally charged with one of the crimes enumerated in subsection (2). The State, nevertheless, argues that this con-

struction is inconsistent with the statute's overall purpose of deterring domestic violence. This argument results in an inconsistency between the more general language of subsection (2) and the more specific language of subsection (*o*). Given this inconsistency, we look to legislative history to resolve the ambiguity. *See Utah State Tax Comm'n v. Stevenson*, 2006 UT 84, ¶ 32, 150 P.3d 521. Such history reveals that the legislature intended to add disorderly conduct as a domestic violence offense only when it resulted from a plea agreement after a defendant was charged with one of the crimes enumerated in subsection (2).

¶ 14 Subsection (*o*) was added to section 77–36–1 in 1999. *See* 1999 Utah Laws Ch. 229 § 1. There was no debate when the amendment was adopted, only the following description offered by Representative Goodfellow, the bill's author:

> [H]ouse bill 240 has to do with domestic violence, and let me first of all try to explain the problem that we're trying to correct. When someone who's been charged with domestic violence under one or more of the elements as defined on lines 17–38, by the time they go to court, they often are plea bargained down to disorderly conduct. *However, disorderly conduct is not part of the domestic violence part of the code.* Therefore at a future time when someone ... then tries to get a protective order they can't because this is not under the domestic violence part of the code. And so the attempt here is to bring the domestic violence or the disorderly conduct under the domestic violence ... part of the code but *only after* someone has been charged with one of the elements of the domestic violence code then when it's plea bargained down to d[isorderly] c[onduct] that becomes part of the d[omestic] v[iolence] part.

House Floor Debate, Utah State Legislature, 1999 Gen. Leg. Sess., Rep. Goodfellow, Feb. 9, 1999. (Emphasis added.) This comment clarifies that the legislature intended to limit the effect of disorderly conduct convictions on subsequent domestic violence convictions. The legislature apparently determined that disorderly conduct convictions other than

those resulting from a plea agreement after an original charge of one of the crimes enumerated in subsection (*o*) did not warrant enhancement of a subsequent domestic violence conviction. Accordingly, because Defendant's conviction for disorderly conduct did not arise in the specific manner described in subsection (*o*), we affirm the trial court's decision to reduce Defendant's convictions to class A misdemeanors.

## II. Cross–Appeal

¶ 15 This determination renders Defendant's arguments raised on cross-appeal moot.

> The function of appellate courts, like that of courts generally, is not to give opinions on merely abstract or theoretical matters, but only to decide actual controversies *injuriously affecting the rights of some party to the litigation,* and it has been held that questions or cases which have become moot or academic are not a proper subject to review.

*McRae v. Jackson*, 526 P.2d 1190, 1191 (Utah 1974) (emphasis added) (internal quotation marks omitted). Defendant asserts that the trial court erred in finding that his disorderly conduct conviction involved domestic violence and that the term cohabitant, as applied to him, is vague and overbroad. These issues are moot because the trial court's finding of fact had no legal effect on Defendant's rights, and Defendant's convictions were not enhanced as a result of the disorderly conduct conviction involving his father-in-law. Thus, the points Defendant takes issue with do not relate to an "actual controvers[y] injuriously affecting" Defendant's rights, and the issues are therefore moot. *Id.* Accordingly, we decline to further address them.

## CONCLUSION

¶ 16 We affirm the trial court's order reducing Defendant's convictions to class A misdemeanors because Defendant's disorderly conduct conviction did not result from a plea agreement reducing his charges from one of the crimes enumerated in Utah Code section 77–36–1(2). We decline to address

Defendant's claims raised on cross-appeal because they are moot.

¶ 17 WE CONCUR: JAMES Z. DAVIS and CAROLYN B. McHUGH, Judge.